## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## ARA SERVICES, INC., Respondent.

### No. 81–1701.

United States Court of Appeals,
Third Circuit.

Argued Dec. 15, 1981.

Reargued En Banc Nov. 8, 1982.

Decided Sept. 9, 1983.

As Amended Dec. 27, 1983.

58

Lawrence J. Song, Atty., N.L.R.B., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, John H. Ferguson (argued), Atty., Washington, D.C., for petitioner.

Jackson, Lewis, Schnitzler & Krupman, Norman R. Buchsbaum, Joe C. Ashworth, Baltimore, Md., and Roger S. Kaplan (argued), New York City, for respondent.

Argued Dec. 15, 1981.

Before ADAMS, GIBBONS and GARTH, Circuit Judges.

Reargued En Banc Nov. 8, 1982.

Before SEITZ, Chief Judge, and ALDISERT, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLOVITER and BECKER, Circuit Judges.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

GIBBONS, Circuit Judge:

This case is before us on the application of the National Labor Relations Board (the Board) to enforce its order finding that ARA Services, Inc. (ARA) violated section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) (1976), by refusing to recognize and bargain with Local 1111, United Food and Commercial Workers International Union, AFL–CIO (the Union). That Union has been certified as the bargaining representative for ARA employees in a representation proceeding conducted pursuant to section 9 of the Act. 29 U.S.C. § 159 (1976). The employer concedes the refusal to bargain, but urges that the Board erred in overruling its objections to the conduct of a Board supervised election. The case requires our consideration of the scope of this court's review of the Board's review of a regional director's report on objections to the conduct of elections, in particular a regional director's decision to issue such a report on the basis of an administrative investigation rather than a hearing. We conclude that the Board did not abuse its discretion when it overruled objections to the conduct of the election without requiring that the regional director conduct a hearing, and we enforce the Board's order directing the employer to bargain collectively.

I. Proceedings Before the NLRB

ARA is engaged in the industrial catering business at a number of locations, including the cafeteria and dining room of Bell Laboratories in Murray Hill, New Jersey. On October 24, 1979 the Union, claiming majority support among ARA employees at that facility, sought recognition as their collective bargaining representative. ARA declined recognition, and on November 9 the Union filed a representation petition with

the Board. The company stipulated to a consent election on January 11, 1980, and the stipulation defined the appropriate bargaining unit of 69 members. Of these, 58 cast ballots, with 30 voting for union representation. The regional director for Region 22 thereupon furnished to the parties a tally of the ballots. Within the 5 days permitted by 29 C.F.R. § 102.69(a), counsel for ARA filed with him the following unverified objections to the conduct of the election:

Objection No. 1

The Union, by its officers, agents, supporters and adherents threatened employees with physical harm, social ostracism, and other reprisals if they voted against union representation. The Union, acting through its officers, agents and adherents, chilled the atmosphere and interfered with the free exchange of ideas by advising employees that it was aware of which employees were talking to management representatives, thereby creating an atmosphere of coercion and tension which interfered with the conduct of the election.

Objection No. 2

Board Agent Bennett Muraskin failed to exercise his authority and to affirmatively act so as to make it clear to the employees that the election was being conducted by the Board and that the Board was in actual charge of the voting arrangements but allowed the Union's designated observer to appear to be running the election process, thereby interfering with the election, creating the impression that the Government was not in control and substantially affecting the outcome of the election.

These unverified objections resulted in an investigation by the regional director. *See* 29 C.F.R. § 102.69(c)(1).

During the course of the regional director's investigation ARA furnished unverified handwritten statements by three bargaining unit employees, Kevin Woodruff, Frank Smith and June Colavito. The statement of Woodruff was tendered in support of Objection No. 1, while that of Colavito was tendered in support of Objection No. 2. Smith's contains an additional charge.

Woodruff's statement, in relevant part, reads

Paul Reisner and Enzo Fusco, two pro-union spokesmen on two different occasions, before the voting took place, told me that I should go along with the Union. Enzo said he'd "beat me up" if I did not join the Union. Paul Reisner told me he'd "get back at me" if I didn't join the Union.

. . . . .

The Union man a big tall guy, who was here for the vote said there would be an all-out strike—no food, no jobs, that the trucks would be prevented from delivering food and no one would be able to come to work. Fusco was present when the Union official made this comment. Fusco said to me that I better vote yes. Fusco and some of the others told me that if I didn't vote for the Union, nobody would be my friend or talk to me.

Woodruff's statement does not say whether or not he voted in the election. During the course of his investigation the regional director interviewed Woodruff, Fusco and Reisner. With respect to the charge that Woodruff was threatened with the loss of friends, his Report on Objections notes that Woodruff "admitted, however, that the second threat of losing friends was not taken seriously, due to the bantering nature of the statement, and further claimed to be unsure if Fusco himself was serious when making the statements imputed to him." When interviewed Woodruff apparently reiterated the charge that Fusco threatened to beat him up. He also enlarged upon the charge that Reisner, an assistant chef, threatened to get back at him, stating that this threat was made after Reisner had learned Woodruff had disclosed a union campaign letter to a supervisor.

During the course of the investigation both Fusco and Reisner were interviewed, and both denied making the alleged threats. The regional director did not, however, resolve this credibility issue. Instead, his report observes:

The investigation revealed that neither Fusco nor Reissner [sic] were identified as prominent Union partisans in the pre-election period, neither distributed or collected authorization cards or acted as election observers. Further, Reissner [sic] resigned prior to the date of the election and Fusco's employment terminated shortly thereafter. Employees other than both Fusco and Reissner [sic], have been identified as having established initial contact with Petitioner [Union], distributing, collecting and returning authorization cards on behalf of Petitioner [Union] and serving as active members of an organizing committee. Such overt activity on behalf of Petitioner [Union] by such other employees is generally not sufficient to establish agency thereby holding Petitioner [Union] responsible for the alleged wrongdoings of employees without more.[2] In this regard, Fusco and Reissner [sic] were not the prime Union adherents, and there is no evidence that the Petitioner [Union] was aware of any alleged misconduct attributed to them nor condoned or ratified any of their alleged actions. Further there is no evidence that any representative of Petitioner [Union] engaged in any other misconduct.

[2] *International Ladies' Garment Workers' Union, AFL–CIO,* 214 NLRB 706 (1974).

Woodruff's statement is the only evidence submitted by ARA in support of Objection No. 1. Except for the interlineation describing Reisner and Fusco as "two pro-union spokesmen" it contains no information about the connection of either to the Union or the organizing effort. Thus the facts respecting their status developed during the regional director's investigation is uncontradicted by any evidence submitted by ARA.

1. The statement in relevant part reads:

I was the Company's observer during the NLRB election. Mary Ann Ysebaert was the Union observer. When the employees came into vote, Ysebaert would say "I'm sorry, but your name please, I have to do this." There were two NLRB agents, they said nothing when she did all the talking and gave the voters the impression that the Union and not the Government was running the election.

Colavito's statement is quoted in the margin.[1] It refers to no specific misconduct by either the Board agent supervising the election or the Union observer. In a conclusory manner it asserts that from her viewpoint as a company observer the Union observer acted so officiously as to give the impression the election was under Union control, and the Board agents failed to negate that impression. The regional director's investigation determined that the election notices printed by the Board and informing the voters that the election was under the Board's aegis, were duly and timely posted; that observers for the parties were instructed as to their duties and were issued and wore identifying badges during the election; that the Board agents also wore identifying badges; and that both observers scrupulously followed the Board agents' instructions. The Regional Director concluded that "no probative evidence was submitted, nor did the investigation disclose any evidence, that the Petitioner's [Union's] observer engaged in any conduct that was intended to or had the effect of interfering with the employees' free choice in the election. . . ."

Smith's statement contains the charge that "several of the pro-Union girls told me that if I voted for the Union in the NLRB election, the Union would be giving me a birthday gift." This objection was not made within the time permitted by 29 C.F.R. § 102.69(a), but Board precedent permits the regional director to consider matters uncovered in the course of an investigation not specifically alleged in objections to an election. *See Pure Chem Corp.,* 192 NLRB 681 (1971) (election set aside on basis of facts developed in regional director's investigation, not alleged in objec-

Ysebaert would tell me, "Wait a minute, wait and [sic] minute," right in front of the voters, making it seem she was in charge of the voting procedure. The Board agents never stopped her from appearing to take charge of the voting [indecipherable]. Elaine Taylor, a grill employee, stated that if Mary Ann Ysebaert didn't seem to run the election, this could not have happened: Taylor told this to Beulah Boulware, who prepares sandwiches.

tion). The regional director in his investigation obtained an affidavit from Smith denying that the Union was to be the donor of the birthday gift, and admitting that the reference to such a belated gift (his birthday was some time past) was made facetiously. The regional director reported that the incident "does not raise a substantial issue which would warrant setting aside the election."

On February 21, 1978, the regional director recommended to the Board that ARA's objections be overruled in their entirety, and that the Union be certified as bargaining representative. Within the 10 days provided in 29 C.F.R. § 102.69(e), ARA filed 13 exceptions to his report which are quoted in the margin.[2] A three-member panel of the Board reviewed the record in light of ARA's exceptions and brief and adopted the regional director's findings and recommendations. It certified the Union as bargaining representative on April 3, 1980. ARA's motion for reconsideration was denied on May 1, 1980. Meanwhile on April 11, 1980, ARA informed the Union that it would not bargain collectively, and on April 17, 1980 the unfair labor charge was filed. The Board's general counsel promptly filed a complaint and moved for summary judgment. ARA's response relied on its exceptions to the regional director's report and motion for reconsideration. In granting the general counsel's motion on August 12, 1980, the Board noted:

> All issues raised by Respondent [ARA] in this proceeding were or could have been litigated in the prior representation proceeding, and Respondent does not offer to adduce at a hearing any newly discovered or previously unavailable evidence, nor does it allege that any special circumstances exist herein which would require the Board to reexamine the decision made in the representation proceeding.

It therefore held that ARA's refusal to bargain violated section 158(a)(5).

## II.

### ARA's Objection to Certification

ARA objects to enforcement on two grounds: that the Board should have direct-

2. Pursuant to Section 102.69 of the Board's Rules and Regulations, ARA Services, Inc., Employer in the above-captioned proceeding, by its undersigned counsel, excepts to the Regional Director's Report on Objections (the "Report"), as follows:

1. To the failure (Report at 3) to find that the Petitioner, through its agents, supporters and adherents threatened certain employees with physical harm and social ostracism if they voted against union representation.

2. To the erroneous finding (Report at 4) that Employees Fusco and Reisner did not either act with apparent authority or be perceived by unit employees as having the authority to act on behalf of the Union when they threatened certain employees with physical harm and social ostracism.

3. To the erroneous conclusion by the Regional Director (Report at 3) that Employer's proffered unit employee Woodruff, failed to take the threats of physical harm and social ostracism seriously.

4. To the failure to find (Report at 5–6) that the Union through its agents attempted to influence Employee Smith to vote for the Union by promising him material gifts.

5. To the failure to (Report at 2–4) sustain Objection No. 1 as supported by the evidence.

6. To the failure (Report at 2–4) to set aside the election on the basis of Objection No. 1.

7. To the failure (Report at 2–4) to order an evidentiary hearing be conducted on the substantial material issues, including matters of testimonial credibility, raised by Objection No. 1.

8. To the failure to find (Report at 6) that the conduct of Board Agent Muraskin was inadequate to create the impression that the Government and not Petitioner was in fact running the election.

9. To the inaccurate finding (Report at 6) that Petitioner's observer did not influence the outcome of the election by his actions during the actual election.

10. To the failure to (Report at 5–6) sustain Objection No. 2 as supported by the evidence.

11. To the failure to (Report at 5–6) set aside the election on the basis of Objection No. 2.

12. To the failure (Report at 5–6) to order an evidentiary hearing be conducted on the substantial and important questions raised by Objection No. 2.

13. To the failure (Report at 6) to sustain both Objections, set aside the election, and/or order an evidentiary hearing be conducted.

ed the regional director to hold an evidentiary hearing, and that its certification was made without reviewing all the materials relied on by the regional director.

## A. The Evidentiary Hearing Contention

Disposition of ARA's contention that it is entitled to a pre-certification evidentiary hearing requires an appreciation both of the statutory scheme governing representation proceedings, and of the standards developed by the Board respecting the atmosphere in which representation elections shall be conducted. Section 9 of the National Labor Relations Act governs selection of collective bargaining representatives. 29 U.S.C. § 159 (1976). It provides that employees may petition for certification of a bargaining representative. Upon the filing of such a petition an employer and a labor organization may, as was done in this case, enter into a consent election agreement. 29 U.S.C. § 159(c)(4); 29 C.F.R. § 102.62 (1981). If no consent agreement is made "the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto." 29 U.S.C. § 159(c)(1). While the statute refers to a "hearing," it is clear that the purpose of that hearing is merely to gather information to facilitate the Board's investigation. "It shall be the duty of the hearing officer to inquire fully into all matters and issues necessary to obtain a full and complete record upon which the Board or the regional director may discharge *their* duties under section 9(c) of the act." 29 C.F.R. § 102.64(a) (1981) (emphasis in original). If a representation question exists the Board "shall direct an election by secret ballot and shall certify the results thereof." 29 U.S.C. § 159(c)(1). The Act contains no provision for direct judicial review. Congress made the deliberate choice of insulating those proceedings from direct judicial review so as to prevent attrition of union support caused by delay in the commencement of collective bargaining. *Boire v.*

*Greyhouna Corp.*, 376 U.S. 473, 478–79, 84 S.Ct. 894, 897, 11 L.Ed.2d 849 (1964). Instead the Act provides:

> Whenever an order of the Board made pursuant to section 160(c) of this title is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section and there is a petition for the enforcement or review of such order, such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed under subsection (e) or (f) of section 160 of this title, and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the Board shall be made and entered upon the pleadings, testimony, and proceedings set forth in such transcript.

29 U.S.C. § 159(d). This is the only statutory provision dealing with judicial review of representation questions. It does not deal with election irregularities in a consent election. Investigations under section 9(c) are directed only to such issues as the substantiality of union support and the appropriateness of the bargaining unit; questions which are mooted by a consent election agreement. Such elections are conducted "in conformity with regulations and rules of decision of the Board." 29 U.S.C. § 159(c)(4).

Under the rules adopted by the Board as of 1981 for the conduct of elections, 29 C.F.R. § 102.69 (1981), "[w]ithin 5 days after the tally of ballots has been furnished, any party may file with the regional director ... objections to the conduct of the election or conduct affecting the results of the election, which shall contain a short statement of the reasons therefor." 29 C.F.R. § 102.69(a). If such objections are filed "the regional director shall, consistent with the provisions of § 102.69(d) investigate such objections" and prepare a report for the Board. 29 C.F.R. § 102.69(c). That report "may be on the basis of an administrative investigation or, if it appears to the regional director that substantial and material factual issues exist which, in the exer-

cise of his reasonable discretion, he determines may more appropriately be resolved after a hearing, he shall issue and cause to be served on the parties a notice of hearing on said issues before a hearing officer." 29 C.F.R. § 102.69(d).[3]

■ If the regional director exercises his discretion in favor of a hearing, that hearing "shall be conducted in accordance with the provisions of §§ 102.64, 102.65, and 102.66, insofar as applicable, except that at the close of such hearing, the hearing officer shall, if directed by the regional director, prepare and cause to be served on the parties a report resolving questions of credibility and containing findings of fact and recommendations as to the disposition of the issues." 29 C.F.R. § 102.69(e). The cross-reference to sections 102.64, 65 and 66 is to the procedures for conducting a section 159(c) investigation. But whereas in a section 159(c) investigation the role of the hearing officer is merely to gather information, not to resolve credibility issues or make recommendations, the election procedure permits the hearing officer to do so if the regional director so elects. Thus a second element of discretion is added to the regional director's initial discretion with respect to holding a hearing.

■ The option of a hearing with respect to objections to the conduct of an election, then, is solely a creature of the Board's rulemaking authority. Nothing in the statute mandates it. Moreover in drafting 29 C.F.R. § 102.69(d) the Board was careful not to track the language of Fed.R.Civ.P. 56(c), authorizing summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact." Instead the Board provided that the regional director had discretion to determine whether or not a given issue of fact could be better resolved by an investigation rather than a hearing. That approach in drafting the rule dealing with challenges to the conduct of elections is consistent with the intention of Congress, which, in section 159(c), chose an inquisitorial model of procedure in the certification of bargaining representatives. In section 160, by contrast, Congress provided for a classic adversarial model of procedure in which any "proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States." 29 U.S.C. § 160(b) (1976).

■ Following an investigation the regional director must file a report to the Board, to which any party may file exceptions with a supporting brief. "In a case involving a consent election . . . , if exceptions are filed . . . and it appears to the Board that such exceptions do not raise substantial and material issues with respect to the conduct or results of the election, the Board may decide the matter forthwith upon the record, or may make other disposition of the case. If it appears to the Board that such exceptions raise substantial and material factual issues, the Board may direct the regional director or other agent of the Board to issue . . . a notice of hearing on said exceptions before a hearing officer." 29 C.F.R. § 102.69(f). As in the case of a hearing directed by a regional director, the Board has discretion to direct the hearing officer to resolve questions of credibility and make findings of fact and recommendations. *Id.* Thus there is superimposed

---

**3.** In 1982, the Board amended 29 C.F.R. § 102.-69(d) to read as follows:

(d) In issuing a report on objections or challenged ballots, or both, following proceedings under §§ 102.62(b) or 102.67, or in issuing a decision on objections or challenged ballots, or both, following proceedings under § 102.67, the regional director may act on the basis of an administrative investigation or upon the record of a hearing before a hearing

officer. Such hearing shall be conducted with respect to those objections or challenges which the regional director concludes raise substantial and material factual issues.

Even if we were to conclude that the amended regulation should have been anticipated by the Board that would not change the outcome since the decision as to substantiality and materiality is still vested in the Regional Director in the first instance.

upon the discretion vested in the regional directors a second level of discretion in the Board, to decide whether or not a hearing will facilitate its investigation into election irregularities.

■ Reasons for the distinction in procedural models between certification proceedings and unfair labor practice proceedings relate to the respective rights involved. If a majority in an appropriate bargaining unit chooses a collective bargaining representative the employer has no right to withhold recognition. Thus the essential dispute in a section 159 certification proceeding is between competing groups of employees, and the sole object of the proceeding is the safeguarding of majority free choice. An inquisitorial or investigatory model is well suited to that end. In an unfair labor practice proceeding, on the other hand, the employer, or a labor organization, is charged by the government with the violation of a statutory duty, and Congress obviously believed that the safeguards of the Federal Rules of Civil Procedure, including Rule 56(c), were necessary. And in casting 29 C.F.R. § 102.69(d) in terms of discretion to conduct a hearing rather than an investigation, the Board chose simply to give the neutral regional directors an additional inquisitorial tool which they can use, in their discretion, to aid in making an informed decision as to whether, as between competing groups of employees, the election represents the voice of the majority. It made the same choice with respect to its consideration of exceptions to the regional director's report.

While section 159(d) makes express provision for limited judicial review of section 159(c) investigations, it makes no reference to the review of issues arising with respect to election procedures. Thus it is not clear on the face of the statute that judicial review was intended in a section 160 enforcement proceeding with respect to any issues other than those arising in a section 159(c) investigation. The Supreme Court cases construing section 159(d) all involve bargaining unit determinations, which present the most typical section 159(c) issue.

*NLRB v. Metropolitan Ins. Co.,* 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965); *Boire v. Greyhound Corp.,* 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); *Pittsburgh Glass Co. v. NLRB,* 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941). *See also NLRB v. Sun Drug Co.,* 359 F.2d 408 (3d Cir.1966); *NLRB v. Capital Bakers, Inc.,* 351 F.2d 45 (3d Cir.1965). Nevertheless this court, without considering the possible distinction between section 159(c) issues and election conduct issues, considered on the merits an objection that the Board erred in failing to hold a hearing about the atmosphere surrounding an election. In that case we held that "[t]he Board is entitled to rely upon its expertise in reaching its conclusion" that a hearing was unnecessary. *NLRB v. Clearfield Cheese Company,* 322 F.2d 89, 94 (3d Cir.1963). Since *Clearfield Cheese* we have assumed that we have authority from some source to review the Board's election dispute dispositions. *See Season-All Industries, Inc. v. NLRB,* 654 F.2d 932 (3d Cir. 1981) (election misconduct); *Anchor Inns, Inc. v. NLRB,* 644 F.2d 292 (3d Cir.1981) (election misconduct); *Zeiglers Refuse Collectors, Inc. v. NLRB,* 639 F.2d 1000 (3d Cir.1981) (election misconduct); *NLRB v. Campbell Products Dept.,* 623 F.2d 876 (3d Cir.1980) (election misconduct); *NLRB v. Staiman Bros.,* 466 F.2d 564 (3d Cir. 1972) (eligibility to vote); *NLRB v. El-Ge Potato Chip Co.,* 427 F.2d 903 (3d Cir. 1970) (eligibility to vote). The voter eligibility cases, which involve membership in the bargaining unit, involve issues which would ordinarily arise in a section 159(c) proceeding, and thus have a rather strong claim for judicial review on the authority of section 159(d). Our statutory authority to review Board resolutions of electioneering misconduct disputes in unfair labor practice enforcement cases is considerably less apparent. Nevertheless our undertaking to do so involves a not unreasonable interpretation of the interrelationship between section 159(c)(4) and section 160(f). In the absence of an objection by the Board to the exercise of that authority, we assume that some form of judicial review with respect to election misconduct is available. Our in-

quiry is narrower: what is the scope of such review when the Board decides not to require an evidentiary hearing.

To put that inquiry in focus we must consider the nature of the three charges on which ARA relies, and the substantive law to which they are addressed. The charges are of threats designed to produce a vote in favor of the union, and a promise designed to induce such a vote, and of inadequate supervision of the balloting. The first two involve allegedly coercive electioneering and may be considered together.

### 1. The Coercion Claim

All of the law with respect to the atmosphere to be maintained in an election campaign is Board-made under the lawmaking authority delegated to it by Congress. Thus the courts must ordinarily defer to the Board's policy judgments respecting the conduct which will be deemed so coercive as to interfere with employee free choice. Traditionally the Board has been reluctant to set aside elections because of misconduct by third parties, as compared with agents of an employer or a union. *See, e.g., NLRB v. Aaron Bros. Corp.,* 563 F.2d 409, 412 (9th Cir.1977) (per curiam); *NLRB v. Bostik Div., USM Corp.,* 517 F.2d 971 (6th Cir.1975); *NLRB v. Staub Cleaners, Inc.,* 418 F.2d 1086, 1088 (2d Cir.1969), *cert. denied,* 397 U.S. 1038, 90 S.Ct. 1357, 25 L.Ed.2d 649 (1970). One reason for the Board's approach is that coercion by an employer or a labor organization in the choice of a bargaining representative is itself an unfair labor practice, prohibited by section 158(a)(1), (b)(1).[4] Another is that setting aside an election is an effective deterrent to misconduct by an employer or a union, while it is no deterrent to third parties. There is, therefore, no assurance that a second election will be held in an improved atmosphere. *See NLRB v. Staub Cleaners, Inc.* Another reason is that the Board, with judicial concurrence, has always accorded less weight to conduct which is attributable to neither the Union nor the employer. Threats of fellow employees are deemed to be less coercive than those of

agents of a union or an employer who may have the wherewithal to effectuate them. Employees, moreover, are credited with the ability, from experience in the workplace, to give appropriate weight to possibly impulsive statements of fellow employees in the heat of a campaign. *NLRB v. Sauk Valley Manufacturing Co.,* 486 F.2d 1127, 1131 n. 5 (9th Cir.1973); *see also NLRB v. Aaron Bros. Corp.,* 563 F.2d at 412; *NLRB v. Bostik Div., USM Corp.,* 517 F.2d at 975. Perhaps the most important reason for scrutinizing mere employee misconduct by a lower standard than is applied to misconduct by agents of an employer or a union is that expressions of temper and passion may reflect the reality that in a contested election friction is inevitable. Given the nature of inter-employee relations, the Board cannot realistically be expected to create a totally frictionless election environment. *See Polymers, Inc. v. NLRB,* 414 F.2d 999, 1004 (2d Cir.1969), *cert. denied,* 396 U.S. 1010, 90 S.Ct. 570, 24 L.Ed.2d 502 (1970); *NLRB v. Monroe Automotive Equip. Co.,* 470 F.2d 1329, 1332 (5th Cir. 1972), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973). Indeed, insisting that there be no give and take among employees on the subject of the desirability of collective bargaining would in itself be an undue interference with informed employee democracy. Thus the Board's policy of giving lesser weight to instances of third-party misconduct in an electioneering context bears a rational relationship to the underlying policies of the Act, and this court must accept the Board's judgment.

Accepting the Board's judgment in this respect narrows the inquiry still further, for in this instance the regional director's report assumes that Fusco and Reisner may have made the threats attributable to them, and that some of the girls in the plant promised Smith a belated birthday gift. Two questions remain: (1) was an evidentiary hearing required as to whether Fusco, Reisner, and the birthday girls were union agents; and (2) if not, were the threats or

---

4. ARA did not file a section 158(b)(1) unfair labor practice charge against the Union.

promises such as to require, as a matter of law that the election be set aside. If the second question were to be answered affirmatively a hearing might be appropriate to resolve outstanding credibility issues, since Fusco and Reisner denied the threats, and Smith recanted part of his unsworn statement.

■ ARA contends that the failure to hold an evidentiary hearing as to the agency status of Reisner, Fusco, and the birthday girls violated its due process right, which it equates with the standards for evidentiary hearings in Fed.R.Civ.P. 56(c). We reject that contention. The strict standard of Rule 56(c) is derived not from the due process clause of the fifth amendment, but from the seventh amendment. It could be changed with respect to proceedings in which jury trial is not required. What sort of factual investigation is required by due process depends upon a number of variables. *See* Friendly, *Some Kind of Hearing,* 123 U.Pa.L.Rev. 1267 (1975). Certainly the inquisitorial model of procedure selected by Congress for certification matters in section 159(c) of the Act satisfies due process even though the hearing officer, under 29 C.F.R. § 102.64(a) merely reports, without resolving credibility issues or making recommendations. *A fortiori* investigations of election irregularities, which are entirely creatures of Board regulation, do not require evidentiary hearings satisfying Rule 56(c) standards. The governmental policy being implemented is employee free choice of bargaining representative, not employer freedom from collective bargaining. Board supervision and Board investigation with no provision for a hearing on employer complaints would be perfectly consistent with due process for employers. There are instances in which due process requires that an agency afford an adversarial mode of procedure and an evidentiary hearing, in preference to an ex parte inquisitorial process. Determining the basic fairness of an election, however, is not such an instance. At most what we are dealing with in this case is non-constitutional judge-made administrative law with respect to agency conduct, specifically the rule that an agency must generally apply its own rules in a manner that is not arbitrary, capricious, or an abuse of discretion.

■ There was no such abuse here. The Board's rule on election challenges directs the regional director to refer an election challenge to a hearing officer only if he concludes that it raises "substantial and material factual issues." The only material factual issue raised by the statements of Woodruff and Smith was the status of Reisner, Fusco, and the birthday girls as agents of the union. The only "evidence" of such agency status is the interlineation in Woodruff's statement of the words "two pro-union spokesmen" and Smith's attribution of the promise of a birthday gift to "several of the pro union girls." The regional director's ex parte investigation produced no evidence of agency status of these persons. Even if the Board's rules had adopted the "no genuine issue of material fact" standard of Rule 56(c), it is questionable whether ARA, by furnishing the statements of Woodruff and Smith, raised such an issue as to agency status. But certainly it was not an abuse of discretion for the regional director to conclude that no "substantial and material factual issue" as to that status was raised. The Board, when it reviewed the regional director's report and recommendation, was required to consider whether ARA's exceptions raised substantial and material factual issues. An examination of them discloses that they add nothing to what the regional director had before him. Thus its decision to decide the certification question on the record made by the regional director cannot be held to be an abuse of discretion.

■■ Since the regional director and the Board properly treated the allegedly coercive statements as third-party statements, we could deny enforcement only if we believed that assuming they were made they required setting aside the election. Patently the facetious promise by the birthday girls is a trivial matter. As to the threats of Reisner and Fusco, we have recognized that threats by third parties can

create such an atmosphere of intimidation and coercion that a fair election cannot be held. *Zeiglers Refuse Collectors, Inc. v. NLRB*, 639 F.2d 1000 (3d Cir.1981). In the *Zeigler* case, however, there was a hearing at the regional director level, and as authorized by 29 C.F.R. § 102.69(e), the hearing officer made credibility determinations. That officer, having heard the witnesses, concluded that there was a general atmosphere of fear and intimidation. The Board, however, with no evidentiary support, rejected the credibility determinations and factual findings which its own regulations authorized the hearing officer to make. Clearly *Zeiglers* involved an abuse of discretion by the Board in rejecting the hearing officer's findings without explanation or evidentiary support. In this instance, however, both the regional director and the Board ruled that if the threats were made they had no material effect on the election. Woodruff, we note, did not allege that he was influenced by the threats. Considering that the law respecting electioneering atmosphere is Board-made law, and that the regional directors and the Board have far more expertise in judging the effect of threats on employee free choice than we do, we cannot say that these rulings were an abuse of discretion. That being the case there was no need for an evidentiary hearing to resolve the credibility dispute between Woodruff, and Reisner and Fusco over whether the threats were made.

 ARA contends that our decisions in *Anchor Inns, Inc. v. NLRB*, 644 F.2d 292 (3d Cir.1981), and *Season-All Industries, Inc. v. NLRB*, 654 F.2d 932 (3d Cir.1981), require a different conclusion. In *Anchor Inns* we reviewed a record in which there was nothing disclosing why the regional director's ex parte investigation was sufficient to overcome a strong prima facie case of coercion of a sufficient number of voters to change the result of the election. Board certification in that case, without further inquiry, was an abuse of discretion. The opinion is not precise with respect to the scope of our review, but should not be read as inconsistent with the abuse of discretion standard

we apply in this case. The *result* in *Season-All* probably is consistent with that standard, because of the Board's *Michem* rule that electioneering by an agent of an employer or a union at a polling place during balloting is a per se ground for setting aside an election. *Michem, Inc.*, 170 NLRB 362 (1968). The regional director's report in *Season-All* "did not comment on the conflicting evidence as to Sadler's [agency] *status*." 654 F.2d at 937. Disregarding that patently significant material fact issue violated the Board's rules, and was an abuse of discretion. Anything in the *Season-All* opinion which suggests that it announces a different standard of review than we have applied in this in banc case must in the future be disregarded.

2. The Inadequate Supervision Claim

The Board's rules governing elections provides that secret ballot elections shall be conducted under the supervision of a regional director. Any party may be represented by observers of its selection. The parties and Board agents may challenge the eligibility of any person to participate. 29 C.F.R. § 102.69(a). Obviously it is proper, and even necessary, for observers not personally acquainted with every member of the bargaining unit to require identification. Thus the references in Colavito's statement about some of the activities of the Union agent Mary Ann Ysebaert in making such inquiries do not suggest conduct which is in any way improper.

 The Board has held that actions by its agents tending to destroy confidence in election processes or to compromise its neutrality may be a basis for setting aside an election. *See, e.g., Glacier Packing Co., Inc.*, 210 NLRB 571 (1974); *Kerona Plastics Extrusion Co.*, 196 NLRB 1120 (1972). But the test is not whether optimum practices were followed, but whether on all the facts the manner in which the election was held raises a reasonable doubt as to its validity. *Polymers, Inc.*, 174 NLRB 282, 283 (1969). Here the Board's ex parte investigation revealed that the Board's standard practice

respecting notice, identification of observers and agents, instructions to observers, and identification of eligible voters was followed. The vague suggestion in Colavito's statement that it was her impression that the Union observer acted too officiously does not present a substantial and material factual issue as to the fairness of the election requiring an evidentiary hearing. Moreover the statement does not, itself, assuming its accuracy, require that a new election be held. ARA's exceptions to the regional director's report and recommendations adds nothing to Colavito's statement.

To summarize, the regional director in preparing his report and recommendation on ARA's objections to the election in reliance on his ex parte investigation rather than an evidentiary hearing did not abuse his discretion, and the Board, in considering ARA's exceptions to that report did not abuse its discretion. Both acted consistently with the standards set out in the rules governing election challenges.

B. The Incomplete Record Contention

ARA's second objection to enforcement is that the regional director, in transmitting his report and recommendation to the Board, failed to include the affidavits or statements taken during the course of his ex parte investigation. It is the Board's position that the regional director has no obligation to include such materials in a report on an ex parte investigation of objections to an election. *Odum Sausage Co.,* 256 NLRB 284, 107 LRRM 1226 (1981). That interpretation seems consistent with the text of the governing regulation. 28 C.F.R. § 102.69(g).

We may not decide the question in this case, however, because "[n]o objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). Neither in its exceptions to the regional director's report nor in its motion for reconsideration of the certification order nor in its answer to the general counsel's unfair practice complaint, nor in its opposition to the general counsel's motion for summary judgment was this contention mentioned. Whatever may be its merits we may not consider it. *E.g., NLRB v. Ochoa Fertilizer Corp.,* 368 U.S. 318, 322, 82 S.Ct. 344, 347, 7 L.Ed.2d 312 (1961).

III.

Conclusion

Since both of ARA's objections to certification of the Union are without merit, and it tenders no other reason for its refusal to bargain, the Board's order will be enforced in full.

ADAMS, Circuit Judge, concurring.

I concur with the majority, but believe that certain issues raised by the dissent merit additional comment.

At bottom, this case turns on the relationship between an administrative agency's internal procedures and the standard of review by an appellate court. Because judicial review provides an inappropriate occasion for the imposition of court-crafted rules regulating intra-agency procedures, I join the majority in ruling that the order of the National Labor Relations Board must be enforced.

Undoubtedly, arguments may be advanced, perhaps even persuasively, for the use of full adversarial proceedings rather than agency investigations when representation election impropriety is alleged. Unless procedural preference rises to the level of constitutional imperative, however, the decision whether to utilize an investigation or to employ a full hearing is best left to the discretion of the NLRB. There can be no mistaking the Supreme Court's instruction that "absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure." *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978).

We may not deny enforcement of a bargaining order merely because we would pre-

fer another result, or even because we believe that the NLRA could be read to support a conclusion contrary to that adopted by the Board. Rather, we are mandated to enforce orders of the Board so long as "the Board's construction ..., while it may not be required by the Act, is at least permissible under it...." *NLRB v. Transportation Management Corp.*, —— U.S. ——, 103 S.Ct. 2469, 2475, 76 L.Ed.2d 667 (1983), *citing NRLB v. Weingarten*, 420 U.S. 251, 266–67, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975). *See NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1149, 10 L.Ed.2d 308 (1963); *Giacalone v. NLRB*, 682 F.2d 427, 430 (3d Cir.1982).

My dissenting colleagues, particularly in section III A of their opinion, seek to substitute the summary judgment standard drawn from Rule 56 of the Fed.R.Civ.Pro. for the NLRB's discretionary approach to evidentiary hearings of this nature. Such a standard would require a full evidentiary hearing whenever a colorable claim of an election interference is raised before the Board. The Board's amended regulation, to which the dissent ascribes great importance, provides only that the NLRB's regional director "may act upon the basis of an administrative investigation or upon the record of a hearing before a hearing officer" and that such discretion is left to the regional director's determination whether the allegations "raise substantial and material factual issues." 29 C.F.R. § 102.69(d) (1982). In the situation here, there is no claim that the alleged threats were made by the union or its representatives, and the investigation makes it clear that neither the union nor its representatives were involved.

Although hearings frequently serve a useful purpose, requiring a hearing regardless of the factual setting promotes undue delay in the administrative process at the expense of the freedom of choice of the workers. *Season-All Industries, Inc. v. NLRB*, 654 F.2d 932, 942 (3d Cir.1981) (Adams, J., dissenting). Almost four years have now passed since the employees of ARA sought to avail themselves of the right to collective bargaining guaranteed by the National Labor Relations Act. Given the sparseness of the factual challenge and the fact that an independent investigation disclosed nothing to augment the unverified statement of one employee, I decline to join in an endeavor that would make this already cumbersome process any more protracted. Appellate courts must be mindful of the capacity of legal and administrative delay to frustrate the statutory rights afforded employees under the NLRA.

GARTH, Circuit Judge, dissenting, with whom HUNTER, WEIS and BECKER, Circuit Judges, join.

I cannot agree with the opinion announcing the judgment of the court for at least two major reasons. First, that opinion gives no recognition to the principle that all elections, including representation elections, should be conducted under laboratory conditions—"as nearly ideal as possible,"[1] so that employees may make a free and fair choice of a bargaining representative if they desire one. Thus it discounts those cases, including the Board's own decisions, which have set aside elections where employees have been subjected to fear and intimidation. Second, Judge Gibbons, in announcing the opinion of the court, ascribes to Congress an intention to permit Regional Directors, and then the Board, an almost unreviewable discretion in the determination of objections raised to an election. The opinion compounds that error by failing to give proper recognition to the Board's own regulations and by failing to announce a standard by which such discretionary determinations may be measured.[2]

1. *Monmouth Medical Center v. NLRB*, 604 F.2d 820, 824 (3d Cir.1979).

2. I do not disagree with Judge Gibbons' disposition of the Company's second Objection, predicated upon the statement of employee Jane Colavito, the Company observer. In essence her statement amounts to no more than a bare assertion that from her viewpoint as the Company observer the conduct of the Union observer gave her the impression that the election was Union-controlled, and the Board agents never acted to negate that impression. Her statement refers to no specific misconduct by either the Board agent or the observer.

## A.

In Judge Gibbons' opinion, he states that, under now repealed regulations of the NLRB,[3] the Board is not required to hold a hearing even if "substantial and material factual issues" exist. This is so even if resolution of the issue turns on credibility determinations of the witnesses for the contesting parties. That principle ignores the fact that the election results at issue here, turned upon one vote and that the alleged election irregularity involved threats of violence and retaliation.

I believe that under the principles enunciated by the Supreme Court in *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) and *United States v. Schooner Peggy,* 1 Cranch (5 U.S.) 103, 2 L.Ed. 49 (1801), we are bound to apply the revised regulations of the Board to a case still on appeal, which require a hearing when factual issues are disputed, rather than those in effect before September 15, 1981. I also believe that, pursuant to 29 C.F.R. § 102.69(d) (1982), and the fairness requirements of the due process clause, ARA should have been afforded a hearing

on its objections with respect to Woodruff's crucial vote. It is clear to me that Woodruff's statement—that two pro-union spokesmen threatened him with violence and retaliation unless he voted for the union—raised "substantial and material issues *of fact*" which, if believed, would warrant setting aside the election as a matter of law. Further, even if I were to apply the now superseded regulations in existence at the time ARA's objections were filed, I could only conclude, on the basis of the reasoned opinions of other courts of appeals, including this court's previous decisions which have been accepted and relied upon by other circuits, that ARA was entitled to a hearing with respect to Woodruff's charges.

Because Judge Gibbons' opinion fails to apply the regulation now in force, adopts a standard of review of the now repealed regulation inconsistent with the Board's own interpretation (*see* n. 5 *infra*) and inconsistent with that adopted by other courts of appeals, and incorrectly concludes that Woodruff's statement did not raise "substantial and material factual issues"

---

Nor do I disagree with the disposition of the claim that there had been an attempt to bribe an employee, one Frank Smith. The record discloses that even Smith did not take seriously the representation that "if ... [he] voted for the Union ... the Union would be giving [him] a birthday gift."

Thus, as the text reveals, my principal disagreement with Judge Gibbons' opinion announcing the judgment of the court is in its treatment of the Company's major Objection, that "the Union, by its officers, agents, supporters, and adherents, threatened employees with physical harm ... if they voted against Union representation ...."

3. The regulations in effect at the time ARA Services filed its objections provided, in pertinent part:

> Within 5 days after the tally of ballots has been furnished, any party may file with the regional director ... objections to the conduct of the election or conduct affecting the results of the election, which shall contain a short statement of the reasons therefor.

29 C.F.R. § 102.69(a) (1981). Upon the filing of such objections, the Regional Director was required to investigate the objections and prepare a report for the Board. 29 C.F.R. § 102.-69(c) (1981). That report could be prepared

on the basis of an administrative investigation or, if it appears to the Regional Director that substantial and material factual issues exist which, in the exercise of his reasonable discretion, he determines may more appropriately be resolved after a hearing, he shall issue and cause to be served on the parties a notice of hearing on said issues before a hearing officer.

29 C.F.R. § 102.69(d) (1981).

Effective September 14, 1981, the Board "restated and clarified" its procedural rules "to make clear that *ex parte* investigations are not to be used to resolve 'substantial and material factual issues,' particularly where the factual issues turn on credibility." 46 Fed.Reg. 45,922 (September 15, 1981). The rule now provides:

> In issuing a report on objections or challenged ballots, or both, following proceedings under §§ 102.62(b) or 102.67, or in issuing a decision on objections or challenged ballots, or both, following proceedings under § 102.-67, the Regional Director may act on the basis of an administrative investigation or upon the record of a hearing before a hearing officer. Such hearing shall be conducted with respect to those objections or challenges which the Regional Director concludes raise substantial and material factual issues.

29 C.F.R. § 102.69(d) (1982).

with respect to the union status of Reisner, and Fusco, or independently, with respect to whether the threats, if actually made, created an atmosphere of fear rendering a fair election impossible, I would deny enforcement to the Board's order and remand the case for an evidentiary hearing. It is for these reasons that I have not joined Judge Gibbons' opinion announcing the judgment of the court and respectfully dissent.

## I.

### A.

Over 180 years ago, Chief Justice Marshall explained that:

[I]f subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.

*United States v. Schooner Peggy,* 1 Cranch (5 U.S.) 103, 110, 2 L.Ed. 49 (1801). The Supreme Court has never deviated from this teaching. *See Cort v. Ash,* 422 U.S. 66, 74–77, 95 S.Ct. 2080, 2086–87, 45 L.Ed.2d 26 (1975) (a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary); *Bradley v. Richmond School Board,* 416 U.S. 696, 711–716, 94 S.Ct. 2006, 2016–19, 40 L.Ed.2d 476 (1974) (change in the law *must* be given effect unless there was a clear indication that it was *not* to apply in pending cases).

In *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), the Supreme Court made plain that the rule of *Schooner Peggy* applies with equal force "where the change is made by an administrative agency acting pursuant to legislative authorization." *Thorpe, supra,* 393 U.S. at 282, 89 S.Ct. at 526.[4] *Thorpe* also "stands for the proposition that even where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect." *Bradley, supra,* 416 U.S. at 715, 94 S.Ct. at 2018. Applying the standard enunciated in *Thorpe* to the present case, it is manifest to me that we must apply the Board regulations in effect after September 15, 1981, as amended.[5]

### B.

The Board itself has provided us with an interpretation of the amended regulation 29 C.F.R. § 102.69(d) (1982).[6] This interpretation was made so as to make the Board's application of its regulation consonant with that of the various courts of appeal. The Board stated that:

In *N.L.R.B. v. Claxton Manufacturing Company, Inc.,* 613 F.2d 1364, 103 LRRM 2980 (5th Cir.1980), the court held that due process requires that a hearing be conducted when the losing party files evidence that, prima facie, raises substantial and material issues that would warrant setting aside the election. In addition, the court held that when the objecting party had established a right to a hearing, the Regional Director's "investiga-

**4.** In *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), the Department of Housing and Urban Development (HUD) ordered a new procedural prerequisite for an eviction after it had secured a state court eviction order, affirmed by the Supreme Court of the State of North Carolina. Following a remand by the U.S. Supreme Court for such further proceedings in light of the new directive, the state court adhered to its decision. It held that since the critical events had occurred prior to the date of the circular, "[t]he rights of the parties had matured and had been determined before the directive was issued. *Housing Authority of the City of Durham v. Thorpe,* 271 N.C. 468, 470, 157 S.E.2d 147, 149 (1967). Upon review, the

Supreme Court held that, although the circular effecting the change did not indicate whether it was to be applied to pending cases or to events that had transpired prior to its issuance, it was, nonetheless, to be applied to anyone residing in the housing project on the date of promulgation. *Thorpe, supra,* 393 U.S. at 282, 89 S.Ct. at 526.

**5.** Indeed, in fashioning these changes to the regulations, the Board described them as no more than a restatement of the rule then currently in force. *See* 46 Fed.Reg. 45,922 (September 15, 1981).

**6.** See *supra* note 3.

tion of the objections was not a substitute for it. The hearing may not be denied on the basis of new information obtained ex parte by the Regional Director." The court added that the Regional Director "must make available relevant information discovered in the course of his investigation, at least to the extent that [an objecting party] has pointed him toward it, whether it favors the successful party or the objector and regardless of whether it was referred to by the objector's affidavits or is independently turned up by the investigation."

Due in part to the opinion in *Claxton*, supra, and other similar court decisions like it, the Board reexamined its procedures for disposing of postelection objections to the conduct of elections. On September 15, 1981, the Board amended its Rules and Regulations at 29 CFR Sections 102.68 and 102.69 pertaining to procedures applicable to disposition of objections to an election. Therein the Board acknowledged the criticism by the courts of the Board's failure to hold hearings on election objections in a situation when, in the opinions of the courts, the "substantial and material factual issues" standards of the Board's Rules and Regulations required it to do so. The revisions in the Board's Rules and Regulations make clear that ex parte investigations are not to be used to resolve "substantial and material factual issues" particularly where the factual issues turn on credibility. Rather the rules specifically provide that a hearing "shall be conducted with respect to those objections or challenges

which the Regional Director concludes raise substantial and material factual issues." Section 102.69(d).

In this proceeding, as noted supra, the Employer has supplied affidavits to the Regional Director which show that an employee was the victim of a threat on his life from someone who purported to be a representative of the International. The asserted threat came sometime after the victim expressed his support for the Employer to his fellow employees. Although the record suggests that only two unit employees, Miller and his son, may have known about the threat before the election, the Board has held that in the reality of industrial life a serious threat, though made to a single employee, will affect other employees in the selection of a union as it will be inevitably discussed by them.[3] In this case, we find that the record contains inconsistent statements with respect to the circumstances surrounding the alleged threat. The resolution of these conflicts by the Regional Director was improper and requires that we remand this proceeding for further hearing.[4] Accordingly, we shall remand this proceeding to the Regional Director for him to arrange a hearing on the Employer's Objection 1.

---

[3] *General Stencils, Inc.,* 195 NLRB 1109, 79 LRRM 1608 (1972).

[4] *See Anchor Inns, Inc., d/b/a Anchor Inn Hotel of St. Croix,* 644 F.2d 292, 106 LRRM 2860 (3d Cir.1981); *Claxton Manufacturing,* supra.

*Erie Coke & Chemical Co.,* 261 N.L.R.B. No. 8, 109 L.R.R.M. 1373, 1374.[7] Therefore,

**7.** The Fifth Circuit, in *NLRB v. Claxton Manufacturing Co.,* 613 F.2d 1364 (5th Cir.1980) also concluded that the right to a hearing, in the face of "substantial and material factual issues" was also required by the due process clause. *See id.,* 613 F.2d at 1365, 1366. Other courts of appeal have come to the same conclusion with regard to the regulations in existence before September 15, 1981. Thus, Circuit Judge J. Skelly Wright, writing for the District of Columbia Circuit concluded that:

The Regional Director's investigation and report is not an adversary proceeding or adjudication in the usual sense, and yet it may determine crucial issues of fact or mixed law

and fact which will underlie a future unfair labor practice determination. Congress' presumed sense of due process tradition, if not the command of the Constitution, thus supports the principle that an adversary hearing must be held at some point in the process where genuinely contested factual issues are properly raised.

*International Union of Electrical, Radio and Machine Workers v. NLRB,* 418 F.2d 1191, 1196 (D.C.Cir.1969); *see also Pinetree Transportation Co. v. NLRB,* 686 F.2d 740, 744 (9th Cir.1982); *Louis-Allis Co. v. NLRB,* 463 F.2d 512, 520 (7th Cir.1972); *NLRB v. Commercial Letter, Inc.,* 455 F.2d 109, 114 (8th Cir.1972);

Judge Gibbons' conclusion that, under the law applicable in this case, the Regional Director could deny a hearing even in the face of "substantial and material issues of fact," must fall. As the Board itself has made clear, under the 1981 amendments [8] to the regulations, the Regional Director could not resolve the factual conflict without an adversary hearing between the Union's position on the one hand, and the Company's Objection and Woodruff's statement on the other. A hearing is *required* whenever the objecting party establishes the existence of factual disputes of a substantial and material nature which, if resolved in its favor, would warrant setting aside the election.

## II.

### A.

Even if the regulation in force at the time that ARA filed its election objections were to govern the resolution of this case, it is plain to me that a hearing was required in this case because "substantial and material issues of fact" were raised by ARA. Judge Gibbons' opinion has construed 29 C.F.R. § 102.69(d) (1981) to allow the Regional Director to hold no more than an *ex parte* inquiry in the broad exercise of his discretion, even where "substantial and material" issues appear. Moreover, his opinion would establish the Board's discretion as the scope of review over the Regional Director's exercise of his discretion.

NLRB v. Bata Shoe Co., 377 F.2d 821, 826 (4th Cir.) *cert. denied,* 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967).

8. The significance of amending the 1981 regulations so as to delete the clause "in the exercise of his reasonable discretion" should not be overlooked. The 1982 regulation no longer carries forward the "discretionary" clause found in the 1981 regulation, but substitutes the requirement that "[a] hearing shall be conducted with respect to those objections or challenges which the Regional Director concludes raise substantial and material factual issues." Cf. 29 C.F.R. § 102.69(d) (1981) with § 102.69(d) (1982), n. 3 *supra.* Thus, even if under the 1981 regulation discretion vested with the Regional Director to deny a hearing where substantial and material factual issues existed, that discretion is no longer available, and indeed

Thus the analysis outlined by Judge Gibbons has first given a virtually unreviewable status to the determinations of the Regional Director and the Board, and second, in approving this two-level discretionary review, has failed to provide any standard by which the unbridled discretion granted to the Regional Director and the Board, may be measured and thus reviewed. Such a status is at variance with the tests prescribed by other courts of appeal, and indeed, by this court notwithstanding the exposition set forth in Judge Gibbons' opinion. As I have just explained in the preceding section, even the Board itself did not, and presently would not, claim for either the Regional Director or itself, the very generous discretionary determinations which the majority has now granted to each of them. Indeed, it was the very standard which the various courts of appeal announced, that led the Board to clarify its own procedures in the 1982 regulations and those procedures, as we have noted, did no more than restate the principles inherent in the Board's earlier regulations.

### B.

The standard, for obtaining an evidentiary hearing where an election is challenged, as explained by the Ninth and Fifth Circuits, is representative of the standard adhered to in the other circuits. In *NLRB v. Advanced Systems, Inc.,* 681 F.2d 570 (9th Cir.1982), the court explained that:

under the Board's clarification to which I have referred in text, it was not permissible even then for such a hearing to be denied.

The Board itself having adopted a procedure (29 CFR § 102.69(d) (1982)) requiring an evidentiary hearing in circumstances such as are presented here, we do no more than insist that the Board adhere to its own internal rules of procedure. Thus, contrary to the suggestion found in Judge Adams' concurring opinion (typescript at 1), such a requirement does not, in my view, offend any principle found in *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). *See NLRB v. Permanent Label Corp.,* 657 F.2d 512, 532 (3d Cir.1981) (Garth, J., concurring and dissenting).

To obtain a hearing, a party must make a prima facie showing of substantial and material factual issues that would, if true, warrant setting aside the election.... If, however, there are substantial and material factual disputes between the election report and the exceptions, a hearing is required.

*Id.,* 681 F.2d at 572. *Pinetree Transportation Co. v. NLRB,* 686 F.2d 740 (9th Cir. 1982), noted that, "[b]y 'material' we mean that the facts offered by the objecting party, if accepted as true, must warrant a conclusion in favor of that party on the issue of the validity of the election." *Id.,* 686 F.2d at 745 (citing *Anchor Inns, Inc. v. NLRB,* 644 F.2d 292 (3d Cir.1981)); [9] *see also May Department Stores v. NLRB,* 707 F.2d 430, 432 (9th Cir.1983); *Scintilla Power Corp. v. NLRB,* 707 F.2d 419 (9th Cir.1983); *NLRB v. Eskimo Radiator Manufacturing Co.,* 688 F.2d 1315 (9th Cir.1982); *NLRB v. Belcor, Inc.,* 652 F.2d 856, 858–859 (9th Cir. 1981).

The standard applied in the Fifth Circuit, announced in *Claxton Manufacturing, supra,* is almost identical to that applied in the Ninth Circuit. In *Hickory Springs Manufacturing Co. v. NLRB,* 645 F.2d 506 (5th Cir.1981) the court explained that:

In our circuit, it is settled that when an objector such as Hickory Springs makes out a prima facie case by its affidavits the Board must grant a hearing and may not conclude that one is unwarranted by "considering matter turned up by the regional director, ... weighing the relative factual data and ... making credibility determinations." *N.L.R.B. v. Claxton Manufacturing Co.,* [*supra,* 613 F.2d at 1373].

*Id.,* 645 F.2d at 508. Acknowledging that a hearing is not required in every case to determine the validity of election objections, the court concluded that no hearing is required "where if all the facts contended for by the objecting party 'were credited no ground is shown which would warrant setting aside the election.'" *Birmingham Ornamental Iron Co. v. NLRB,* 615 F.2d 661, 663 (5th Cir.1980), quoting in part *NLRB v. Bata Shoe Co.,* 377 F.2d 821, 826 (4th Cir.) *cert. denied* 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967). *See NLRB v. Polyflex Co.,* 622 F.2d 128 (5th Cir.1980); *EDS–IDAB, Inc. v. NLRB,* 666 F.2d 971 (5th Cir.1982); *NLRB v. Smith Industries, Inc.,* 403 F.2d 889, 892 (5th Cir.1968).[10] This

**9.** The court, in *May Department Stores v. NLRB,* 707 F.2d 430 (9th Cir.1983) explained that:

some other circuits apply a "question of law" review rather than an "abuse of discretion" review[. This] is, in this context, largely a semantic difference. Other circuits, like our court, give significant, but not unlimited, deference to the Board. *See, e.g., NLRB v. Claxton Manufacturing Co.,* 613 F.2d 1364, 1365–66, *modified,* 618 F.2d 396 (5th Cir.1980). *Id.* at 432 n. 1.

**10.** It seems that, apart from the position taken by Judge Gibbons in his opinion, it is accepted that the Regional Director, or the Board must hold a hearing on objections to election proceedings that raise substantial and material factual issues which, if taken as true, would warrant the setting aside of the election.

Thus, the District of Columbia Circuit has held that a "hearing must be held when the objections raise 'substantial and material factual issues' which cannot be resolved on the basis of administrative investigation without a hearing." *Amalgamated Clothing Workers of America v. NLRB,* 424 F.2d 818, 828 (D.C.Cir.

1970); *see International Union of Electrical, Radio and Machine Workers v. NLRB,* 418 F.2d 1191, 1196–97 (D.C.Cir.1969) (the Board is required to hold a hearing where substantial factual issues are raised, "especially where, as here, the Board does not allow relitigation of the validity of the election in the refusal to bargain proceedings which follow").

The standard enunciated in the Second and Fourth Circuits is closely analogous to that adopted by our court in *Anchor Inns, Inc. v. NLRB,* 644 F.2d 292, 296 (3d Cir.1981) "[D]espite the broad discretion appropriately given to the NLRB in the conduct of representation elections, ... it is nevertheless the case that a party is entitled to a hearing if, by prima facie evidence, it demonstrates the existence of 'substantial and material factual issues' which, if resolved in its favor, would require the setting aside of the representation election." *NLRB v. Bristol Spring Manufacturing Co.,* 579 F.2d 704, 706–707 (2d Cir.1978); *see also NLRB v. Lance Investigation Service, Inc.,* 680 F.2d 1 (2d Cir. 1982); *NLRB v. Nixon Gear, Inc.,* 649 F.2d 906, 910 (2d Cir.1981); *NLRB v. Hale Manufacturing Corp.,* 602 F.2d 244 (2d Cir.1979). "A hearing is unnecessary ... where if all the facts

standard is the same as the standard found in our own cases. *See, e.g., Anchor Inns, supra.*

The reasons for adopting a standard that requires either the Board or the Regional Director to hold a hearing when substantial and material factual issues are raised have been well stated by the courts:

Had a hearing been granted in the certification process it would have sufficed as the parties would have had an opportunity to present evidence. However, the decision to deny a hearing, under the procedures followed by the Regional Director, does not represent an administrative adjudication of the issues, but can only be called a determination by the Regional Director to foreclose litigation of the issues at that time. At some point in the administrative process the employer is entitled to have an opportunity to present evidence upon which he relies and *to question the evidence upon which the Board relies,* and to submit this evidence for consideration by the Board and this court in proceedings to enforce or set aside the Board's order.

*NLRB v. Commercial Letter, Inc.,* 455 F.2d 109, 114 (8th Cir.1972) (footnote omitted and emphasis supplied). As the Second Circuit explained in *NLRB v. Bristol Spring Manufacturing Co.,* 579 F.2d 704 (2d Cir. 1978):

The purpose of this hearing right is clear. Given the very limited discovery permitted in cases of this type, it is only when parties are given an opportunity to introduce evidence and examine witnesses that improprieties in the conduct of an election may be revealed. As in the case of grants of summary judgment pursuant to Fed.R.Civ.P. 56, it would be *manifestly unjust to permit the entry of judgment* (or, in this case, the enforcement of an NLRB order), *when disputed issues of material fact remain to be settled.*

*Id.,* 579 F.2d at 707. Indeed, the need for a hearing is particularly acute in cases like this one, where an election is close, depending on just one vote, "and even minor misconduct cannot be summarily excused on the ground that it could not have influenced the election." *Henderson Trumbull Supply Corp. v. NLRB, Region 2,* 501 F.2d 1224, 1230 (2d Cir.1974). Where, as here, the

contended for by the objecting party 'were credited no ground is shown which would warrant setting aside the election.' " *NLRB v. Bata Shoe Co.,* 377 F.2d 821, 826 (4th Cir.), *cert. denied,* 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967), quoting in part *NLRB v. Air Control Products of St. Petersburg, Inc.,* 335 F.2d 245, 249 (5th Cir.1964); *see also Newport News Shipbuilding & Dry Dock Co. v. NLRB,* 594 F.2d 8 (4th Cir.1979).

Other circuits have adopted similar standards. *NLRB v. Fuelgas Co., Inc.,* 674 F.2d 529, 531 (6th Cir.1982); *NLRB v. Tennessee Packers, Inc., Frosty Morn Division,* 379 F.2d 172, 177–78 (6th Cir.), *cert. denied,* 389 U.S. 958 (1967); *NLRB v. Katz,* 701 F.2d 703, 705 (7th Cir.1983) (Board's determination can stand only if there is substantial evidence to support the conclusion that the Company failed to demonstrate a prima facie case for overturning the election [i.e., that] the Company's allegations were sufficient, if credited, to result in overturning the election.); *Bauer Welding & Metal Fabricators Inc. v. NLRB,* 676 F.2d 314, 316 (8th Cir.1982); *NLRB v. Target Stores, Inc.,* 547 F.2d 421, 425 (8th Cir.1977); *NLRB v. Griffith Oldsmobile, Inc.,* 455 F.2d 867, 868–869 (8th Cir.1972); *Crown Cork & Seal Co., Inc. v. NLRB,* 659 F.2d 127, 129 (10th Cir.) (Petition-

er's request for an evidentiary hearing can be granted only if it "shows by prima facie evidence the existence of substantial and material factual disputes which, if resolved in its favor, would require the setting aside of the election." (quoting in part *NLRB v. Whitney Museum of American Art,* 636 F.2d 19, 23 (2d Cir.1980)), *cert. denied,* 454 U.S. 1150, 102 S.Ct. 1016, 71 L.Ed.2d 304 (1981).

Prior to today's opinion announcing the judgment of the court, this court stated in *NLRB v. Sun Drug Co.,* 359 F.2d 408 (3d Cir.1966), that:

The parties are entitled to such a hearing if substantial and material factual issues are raised, and if the Board has clearly erred in denying a hearing its order will not be enforced. It is equally clear, however, that such a hearing will not be required if no such issues existed, either because the regional director and the Board have assumed the truth of the factual offer of the objecting party, or because they have reasonably concluded that the facts alleged would not constitute legal justification for setting the election aside.

*Id.,* 359 F.2d at 414; *compare Anchor Inns, Inc. v. NLRB,* 644 F.2d 292, 296 (3d Cir.1981); *and NLRB v. Campbell Products Department,* 623 F.2d 876, 879 (3d Cir.1980).

Regional Director's determination is based in part on the determination that Reisner and Fusco were credible and that Woodruff, the threatened employee, was not to be believed on the basis of affidavits submitted by the parties, it is clear to me that considerations of fundamental fairness required that the Company be given the opportunity to subject Reisner and Fusco to "the cleansing rigors of cross-examination." *NLRB v. Winburn Tile Manufacturing Co.,* 663 F.2d 44, 47 (8th Cir.1981). *See NLRB v. Sun Drug Co.,* 359 F.2d 408, 414–415 (3d Cir.1966); *Anchor Inns, Inc. v. NLRB,* 644 F.2d 292, 296 (3d Cir.1981); *NLRB v. Tennessee Packers, Inc. Frosty Morn Division,* 379 F.2d 172, 177–182 (6th Cir.1967).

Moreover, Judge Gibbons' opinion in departing from the standard established by our prior cases, (*Sun Drug Co., Anchor Inns,* and *NLRB v. Campbell Products Department,* 623 F.2d 876, 879 (3d Cir.1980)) and by other courts, provides no parameters for the broad discretion which it claims is vested in the Regional Director and the Board. Nor does the opinion identify any principles

by which that broad grant of discretion may be tested or reviewed. Thus in future exercises, where the Board's determinations are sought to be enforced or denied, courts will undoubtedly find the analysis contained in the opinion announcing the judgment of the court to be unworkable, and one which will inevitably lead to inconsistent and irreconcilable panel decisions.[11]

C.

The question must then be asked: if a hearing had established the facts alleged by the Company and Woodruff, or if the Regional Director had accepted those facts as true, would the challenged conduct warrant setting the election aside? This court answered that question unequivocally in a recent opinion in which the Company claimed that threats of physical harm to voters tainted a representation election. We held that if a substantial possibility existed that threats were made to an employee-voter, thus poisoning the free and fair choice which an employee is entitled to

---

**11.** Judge Gibbons' opinion attempts to explain our earlier cases of *Anchor Inns* and *Season-All Industries v. NLRB,* 654 F.2d 932 (3d Cir.1981) by declaring that it was, for practically unstated reasons, an "abuse of discretion" in those cases for the Regional Director to have denied the objecting parties an evidentiary hearing. Typescript at 29. However, I can find no principled way to distinguish the facts of *Anchor Inns,* where Judge Gibbons claims that it was an abuse of discretion to deny the hearing, from the facts of this case, where Judge Gibbons opinion finds that the Board did not abuse its discretion by failing to afford ARA an evidentiary hearing on its objections. *See infra,* at Part III. *Anchor Inns,* which required an evidentiary hearing, does not even analyze or rely upon the Board's discretion as the basis for its holding. The attempt to read that case as holding that an abuse of discretion standard applied, wholly distorts the *Anchor Inns* holding and analysis.

Judge Gibbons' opinion, in seeking to reconcile *Anchor Inns* with his present analysis recites: "[*Anchor Inns*] is not precise with respect to the scope of our review, but should not be read as inconsistent with the abuse of discretion standard we apply in this case." Typescript at 29. The standard set forth in those cases, however, could not have been clearer. The court in *Anchor Inns* stated quite "precisely" that the courts will insist on an evidentiary hearing when a party's objection raises sub-

stantial and material issues of fact. Quoting from our decision in *Campbell Products, supra,* the *Anchor Inns* court explained that:

> A party is entitled to an evidentiary hearing where its objection raises substantial and material issues of fact.... As a corollary, no hearing is necessary where the Board assumes the truth of the party's contentions, and then rules as a matter of law that, assuming the facts alleged, the challenged conduct does not warrant setting aside the election.

*Anchor Inns, supra,* 644 F.2d at 296. Moreover, the *Season-All* court did no more than apply the standard set out in *Campbell Products Division* and *Anchor Inns* in determining that an evidentiary hearing was required in that case.

It is significant that in all three cases—*Anchor Inns, Season-All,* and the present case—at least one common question is found: was the Union responsible for an employee's election misconduct as alleged by the employer? Thus, in *Anchor Inns* and in *Season-All,* an evidentiary hearing was required to determine the Union status of a company employee: Victor in *Anchor Inns,* and Sadler in *Season-All.* The three cases are thus indistinguishable. ARA is as much entitled to an evidentiary hearing to determine the union status of Reisner and Fusco, two ARA employees, as were the employers in *Anchor Inns* and *Season-All.*

make, the election must be set aside and a new election held. In so holding we stated:

> The purpose of holding representation elections is to provide a means whereby workers may fairly and freely choose their bargaining representative if indeed they want one. *See NLRB v. A.J. Tower Co.,* 329 U.S. 324, 330 [67 S.Ct. 324, 327, 91 L.Ed. 322] (1946). A representation election should be "a laboratory in which an experiment may be conducted, under conditions as nearly ideal as possible, to determine the uninhibited desires of the employees." *General Shoe Corp.,* 77 NLRB 124, 127 (1948) *quoted in Monmouth Medical Center v. NLRB,* 604 F.2d 820, 824 (3d Cir.1979). The Board has an obligation to insure that an election is held "under such conditions as will be conducive to the sort of free and untrammeled choice of representatives contemplated by the Act." *Methodist Home v. NLRB,* 596 F.2d 1173, 1183 (4th Cir.1979). ... Not every election that fails to achieve perfection should be set aside, otherwise the employees' choice of a representative might never be accomplished, because a never-ending series of challenges to elections could be foreseen. Though we are reluctant to accept less-than-perfect conditions in the election process, we will do so, but only where no coercive conduct has poisoned the fair and free choice which employees are entitled to make. Hence, extreme care must be taken that the laboratory conditions have not become so tainted that employees may have based their vote not upon conviction, but upon fear or upon any other improperly induced consideration. The Board and the courts have emphasized that the existence of a coercive atmosphere, regardless of how such an atmosphere came about, is the critical fact upon which the Board should focus in determining whether a fair and free election was impossible. *Diamond State Poultry Co.,* 107 NLRB 3, 6 (1953); *Cross Baking Co. v. NLRB,* 453 F.2d 1346, 1348 (1st Cir.1971). Thus, if it is determined that a substantial possibility existed that the threats affected the outcome of the election, a new election must be held. *Zeiglers Refuse Collectors, Inc. v. NLRB,* 639 F.2d 1000, 1004–05 (3d Cir.1981).

### D.

Therefore, I can only conclude that the standard we set out in *Sun Drug Co., Campbell Products Department,* and *Anchor Inns,* is the only appropriate standard to be applied in reviewing denials of evidentiary hearings pursuant to the regulations in existence before September 15, 1981. Consequently, it is manifest to me that ARA was entitled to a hearing if it raised "substantial and material factual issues" before the Regional Director in its objections, or before the Board in its exceptions to the Regional Director's report under the regulations as they existed prior to September 15, 1981, or after that date. As the discussion below makes plain, ARA raised such "substantial and material factual issues" before the Regional Director. ARA's factual allegations, if believed, would warrant setting aside the election on the grounds that threats of violence had tainted the election. *Zieglers Refuse, supra.* As such, the Board was required to have afforded ARA an evidentiary hearing on its objections with respect to Woodruff's vote.

### III.

During the certification proceedings in question here, ARA objected to the election, claiming conduct which coerced employees. It supported that objection by a statement of an employee, Kevin Woodruff, which was filed with the Regional Director.

In its application for enforcement the Board contends that the Regional Director assumed the truth of the facts as alleged by ARA, and that ARA's objection and Woodruff's statement did not establish a *prima facie* case which would warrant setting aside the election or which would entitle ARA to a hearing. According to the Board, the threats of physical harm alleged by ARA did not establish a *prima facie* case since there was no evidence that the employees charged with the intimidating con-

duct were Union agents or acted at the behest of the Union. The opinion announcing the judgment of the court has accepted these arguments uncritically.

### A.

The handwritten statement of employee Kevin Woodruff, as submitted by ARA, reads in relevant part:

> Paul Reisner and Enso Fusco, two pro-union spokesmen, on two different occasions, before the voting took place, told me that I should go along with the Union. Enso said he'd "beat me up" if I did not join the Union. Paul Reisner told me he'd "get back at me" if I didn't join the Union.
>
> I told John Connors, a dishwasher, that Reisner had threatened me that he'd "get back at me" if I didn't join the Union. Connors voted in the election.
>
> I was worried the Union might get back at me because they have a powerful Union. The Union man, a big, tall guy, who was here for the vote, said there would be an all-out strike—no food, no jobs, that the trucks would be prevented from delivering food and no one would be able to come to work. Fusco was present when the Union official made this comment. Fusco said to me that I better vote yes. Fusco and some of the others told me that if I didn't vote for the Union, nobody would be my friend or talk to me. Sue Nicastro was with Fusco when he told me I'd be a social outcast if I voted against the Union. Duke was also with them.

(A. 34–35).

In addition, as Judge Gibbons' opinion correctly reports, "When interviewed Woodruff apparently reiterated the charge that Fusco threatened to beat him up. He also enlarged upon the charge that Reisner, an assistant chef, threatened to get back at

him, stating that this threat was made after Reisner had learned Woodruff had disclosed a union campaign letter to a supervisor." Typescript at 6.

The Regional Director's report concluded that the Woodruff statement was not sufficient to support ARA's objection because none of the threats made by Fusco nor Reisner could be attributed to the Union. His report states:

> The investigation revealed that neither Fusco nor Reissner [sic] were identified as prominent Union partisans in the pre-election period, neither distributed or collected authorization cards or acted as election observers.... Employees other than both Fusco and Reissner [sic], have been identified as having established initial contact with [the Union], distributing, collecting and returning authorization cards on behalf of Petitioner, and serving as active members of an organizing committee....
>
> ... I find that neither Fusco nor Reissner [sic] were agents of the Petitioner at any time material herein, and therefore, Petitioner cannot be held liable for their alleged statements even if made.

(A. 12–13).

However, Woodruff claimed that the threats were voiced by specific "Union spokesmen." Such an allegation was at least sufficient to raise a substantial factual issue as to the status of Reisner and Fusco, the two spokesmen identified by Woodruff.[12] Moreover, the Company's Objection specifically claimed that the "[u]*nion* by its *officers* [and] *agents* ... threatened employees with physical harm" and other reprisals if they voted against the Union. Thus, at the very least, the issue of Reisner's and Fusco's status as Union agents was raised by the Company's submissions.[13]

**12.** In *ATR Wire & Cable Co. v. NLRB,* 671 F.2d 188 (6th Cir.1982), the employer, claiming that employees were harassed by "union proponents," filed objections to a representation election. The Sixth Circuit, observing that the "[o]ne salient fact that was directly disputed was the question of [union] agency," held that this question constituted a substantial factual

issue entitling the employer to an evidentiary hearing. 671 F.2d at 190.

**13.** The Regional Director's report also leaves unanswered the questions implicit in Woodruff's statement as to the identity of the Union official who spoke of an all-out strike and whether that official was present when Fusco

Woodruff's statement, without more, readily satisfied the requirements for obtaining an evidentiary hearing. "In order to obtain an evidentiary hearing, the objector's proffer of evidence must prima facie warrant setting aside the election. The proffer may not be conclusory or vague; it must point to specific events and specific people." *Anchor-Inns,* 644 F.2d at 297; *see also Pinetree Transportation Co. v. NLRB,* 686 F.2d 740, 744 (9th Cir.1982); *NLRB v. Claxton Manufacturing Co., Inc.,* 613 F.2d 1364, 1366 (5th Cir.1980); *NLRB v. Nixon Gear, Inc.,* 649 F.2d 906, 910 (2d Cir.1981). Woodruff specifically identified the "union spokesmen" involved and the threats they used. He referred to three different occasions and named employees who were present. His statement could hardly be characterized as "conclusory or vague." Indeed, in *Anchor Inns* a statement submitted by the Company which merely supported an inference that a Company employee was a union agent was there deemed sufficient to mandate an evidentiary hearing. *See Anchor Inns,* 644 F.2d at 297. In *Season-All,* which followed *Anchor Inns,* where the Company objected that an agent of the Union had engaged in electioneering outside the polls, we held that the employee's status, having been disputed, could not be resolved without an evidentiary hearing in which Season-All could participate, examine witnesses, and present evidence.

In the instant action, the Regional Director in his report never found that the threats alleged by Woodruff, had in fact not been made. Rather, with no input from ARA, he found that neither Fusco nor Reisner was an agent of the Union and therefore that the Union could not be held liable for their alleged threats even if made. Nor did the Regional Director or the Board ever address the question as to whether the Union had adopted or ratified Fusco's and Reisner's conduct (*see* n. 13 *supra*). The Regional Director in his report recites the following testimony on which he based his finding:

and Reisner threatened Woodruff, thereby

1. Fusco denied that he was a Union official or authorized representative of the Union.
2. Fusco, while admitting conversations with Woodruff, denied threatening any co-workers, including Woodruff.
3. Fusco's denial is supported by other unidentified employees.
4. Reissner [sic] denied threatening Woodruff, although he admitted knowing that Woodruff had revealed union affairs to a supervisor and admitted advising Woodruff that it was wrong to do so.
5. Reissner [sic] denied acting as a Union representative.
6. "Neither Fusco nor Reissner [sic] were identified as prominent union partisans in the pre-election period."

(A. 11–13).

The difficulty with the position taken by the Regional Director, and then the Board, is manifest. It is clear that the findings made by the Regional Director, having been predicated upon testimony which had never been tested by cross-examination and which had been formulated without giving ARA the opportunity to adduce other evidence, cannot be accorded the weight of findings made after an evidentiary hearing in which both parties have participated. For example, the following questions occur to me:

Would Fusco's denial that he threatened Woodruff be as persuasive had Fusco been subjected to cross-examination? Who were the employees who were present at this conversation and what was their testimony? What did Reisner actually say to Woodruff after he, Reisner, had learned that Woodruff was revealing union affairs to a supervisor? Was Reisner's denial that he had threatened Woodruff "laundered" because his questioning was carried out only by the Regional Director without any other witnesses, including Woodruff, present? What were Fusco's and Reisner's activities or status with the union? Who was the Union official who was present at the time Woodruff claims he was threatened? What actions, if any, did he take to assure Woodruff that the Union was not behind, and did not

adopting or ratifying their conduct.

condone, the threats made? And what were the parameters of the Regional Director's investigation that revealed that neither Fusco nor Reisner were prominent union partisans? From whom did the Regional Director seek his information? What were they asked? What did they answer? [14]

Obviously, these questions and the answers to them would impact not only upon Fusco's and Reisner's status with the Union, but they would also bear on Woodruff's perceptions of the threats which he reported. Unfortunately, with no transcript available for ARA, the Board or the reviewing court, the answer to these and similar related questions will never be known.

Moreover, even had the Regional Director's investigation been disclosed in detail, his findings would still be flawed because he had not assumed the truth of ARA's allegations nor were his findings the product of a hearing in which ARA participated. ARA's allegations and supporting statements presented substantial factual issues bearing on Fusco's and Reisner's status as union agents. *See Anchor Inns,* 644 F.2d at 296. The Regional Director, by failing to assume the truth of those allegations, erred in resolving the issues raised by ARA, where he did so, based solely on his *ex parte* investigation, instead of through an evidentiary hearing. *See Anchor Inns, supra.*

### B.

An even more critical deficiency in both the Regional Director's and the Board's treatment of ARA's allegations, and the endorsement of that treatment contained in Judge Gibbons' opinion, is the erroneous assumption that unless responsibility can be

pinned on the Union for the threats charged, no evidentiary hearing can be had. In this respect, I believe both the Board and, more importantly, Judge Gibbons in his opinion has failed to focus on the crucial issue. While there can be no question that an election can be set aside where the Union itself has threatened the voters, it is also true that an election will not be sustained where threats by pro-union employees, who are not union officials or agents, create an atmosphere of fear or reprisal rendering a fair election impossible. Thus, the question which was presented by Woodruff's statement, was whether he (and perhaps others present) could vote free of fear or coercion in the face of intimidation by two alleged union spokesmen.

We have previously spoken to the issue of union responsibility and the weight it should be accorded. In *Zeiglers Refuse Collectors Inc. v. NLRB,* 639 F.2d 1000, 1007 (3d Cir.1981), we held that the controlling factor where fear or intimidation was charged by employees about to vote, was not the culpability of the Union, but rather whether a fair election could be held. In *Zeiglers,* a representation election was challenged, as it was here, because of threats allegedly made to prospective employee voters. Unlike the situation here, however, in *Zeiglers,* the Regional Director recommended that an evidentiary hearing be held on the claims of coercion. The hearing officer after taking evidence recommended a new election, even though he found that none of the threats alleged could be attributed to the Union. The Board did not accept the Hearing Officer's recommendation, overruled the employer's objections,

**14.** As I have previously noted, neither ARA, the Board, nor we have been privy to whatever may have been reflected in the affidavits or other statements taken by the Regional Director. Such proofs were not transmitted to the Board.

ARA contends that by failing to include these affidavits or statements in the materials furnished to the Board, the Board could not properly consider or rule on the Regional Director's determination. *See e.g. Prestolite Wire Division v. NLRB,* 592 F.2d 302 (6th Cir.1979); *NLRB v. Advanced Systems, Inc.,* 681 F.2d 570

(9th Cir.1982). In light of the deficiencies in the record to which I have just adverted, and in light of the Regional Director's impermissible *ex parte* factfinding, I am troubled by the fact that the Board did not have all the relevant materials upon which the Regional Director based his ruling. *See ATR Wire & Cable v. NLRB,* 671 F.2d 188, 190 (6th Cir.1982) ("[T]he Board abuses its discretion by adopting a Regional Director's report if the Director fails to transmit to the Board all the evidence upon which the Director relies").

and certified the Union which had prevailed in the challenged election.

We ordered the election set aside and denied the Board's petition for enforcement. In doing so, we addressed the aspect of the record which disclosed that none of the threats were attributable to the Union.

> [W]e do not find the factor of union responsibility to be pivotal. It is merely one of many factors that the Board must appraise in determining whether a fair and free election was impossible. . . .

> \* \* \* \* \* \*

> "We are not impressed with the argument that all coercive acts must be shown to be attributable to the union itself rather than to the rank and file of its supporters. As the Board has once said, 'The important fact is that such conditions existed and that a free election is hereby rendered impossible.' "

639 F.2d at 1006, quoting *Home Town Foods v. NLRB,* 379 F.2d 241, 244 (5th Cir.1967). *Accord Methodist Home v. NLRB,* 596 F.2d 1173, 1183 (4th Cir.1979).

In addition, we quoted with approval from Chief Judge Aldrich's opinion in *Cross Baking Co. v. NLRB,* 453 F.2d 1346, 1348 (1st Cir.1971):

> The question, however, is not the culpability of the union, but whether an atmosphere of fear and coercion was created in fact. It does not follow that fear would be less effective if it had an unofficial origin. Indeed, we can visualize situations where it might be more effective. If union officials instigated violence, anti-union employees might gain adherents to get rid, once and for all, of a belligerent union by voting against it, whereas if the atmosphere was the product of co-employees, the rest of the employees might feel they were going to be left with a disagreeable situation whatever should happen in the election, and hence had best learn to live with it.

639 F.2d at 1007. *See also NLRB v. Claxton Mfg.,* 613 F.2d 1364, 1371 (5th Cir.), *clarified,* 618 F.2d 396 (5th Cir.1980). (Even though Union won by a wide margin, 277–168, allegations of coercion by Union supporters and adherents warranted a hearing on employer's objections to election.)

Finally, we emphasized that the Board itself has held that the factor of union responsibility is not dispositive.

> The issue before the Board is whether the election was conducted under such circumstances and under such conditions as were conducive to the sort of free and untrammeled choice of representatives contemplated by the Act. We hold that it was not. The election was held in such a general atmosphere of confusion and fear of reprisal as to render impossible the rational, uncoerced selection of a bargaining representative. *It is not material that the fear and disorder may have been created by individual employees and nonemployees and that their conduct cannot be attributed either to the Employer or to the unions. The important fact is that such conditions existed and that a free election was thereby rendered impossible.* (emphasis added).

639 F.2d at 1006, *quoting Diamond State Poultry,* 107 NLRB 3, 6 (1958) (footnote omitted).

Since *Zeiglers* we have again reaffirmed that

> [I]n establishing and maintaining the "laboratory conditions" conducive to an election, *no conduct disruptive or destructive of the exercise of a voter's free choice can be tolerated, regardless of whether the actions are those of a union agent or a mere employee.*

*Season-All,* 654 F.2d at 940 (emphasis added). I find it difficult to believe that the members of this court who join the instant opinion announcing the judgment of the court, intend to reject the fundamental principle of a free and fair election, by its sweeping statement that "[a]nything in the *Season-All* opinion which suggests that it announces a different standard of review than we have applied in this in banc case must in the future be disregarded." At 68.

Thus, even assuming *arguendo* that the Regional Director was correct in finding that Fusco and Reisner were not union agents, their conduct in threatening and intimidating Woodruff and possibly other employees, could not be tolerated, particularly in a situation where only *one* vote could change the outcome of the election.[15]

### C.

It is argued, however, that since the Woodruff statement describes isolated incidents involving "vague" threatening statements by mere employees it is not sufficient to establish a *prima facie* case. This argument ignores the Board's own prior decisions which have set aside elections on the basis of threats made by pro-union employees similar to those alleged in the Woodruff statement. *See, e.g., Diamond State Poultry Co.,* 107 NLRB 3 (1953) (election set aside because employees of an already unionized plant in several instances told Diamond employees to vote for the CIO "or something would happen"); *Sonoco of Puerto Rico,* 210 NLRB 493 (1974) (election set aside when union adherents threatened physical violence on four occasions if other employees did not vote for the union). In addition, evidence of a few threats of reprisals directed against *one* employee may be sufficient to create a "general atmosphere of fear and coercion" that warrants setting aside an election decided by one vote. *See Steak House Meat Co.,* 206 NLRB 29 (1973) (election of union by vote of 4–3 set aside when two union adherents threatened to "kill" or "get even" with employee).

Crucial to my dissent in this case, is my recognition of the very narrow margin which decided the outcome of the ARA election. If indeed, Woodruff had felt men-aced and had cast his vote out of fear rather than conviction, the Union's majority could not be sustained. When, as is the case here, the objections involve an extremely close election, "even minor misconduct cannot be summarily excused on the ground that it could not have influenced the election." *Henderson Trumbull Supply Corp. v. NLRB,* 501 F.2d 1224, 1230 (2d Cir.1974). *Accord NLRB v. Nixon Gear Inc.,* 649 F.2d 906, 914 (2d Cir.1981).

### IV.

One of the fundamental rights under the National Labor Relations Act which the Board is charged with protecting, is the employees' right to choose their collective bargaining representative, or to refrain from collective bargaining entirely, if they so choose.[16] I believe that the Board has recognized that right by ruling that substantial and material factual issues must be resolved in an adversary hearing. Judge Gibbons' opinion, however, has failed to acknowledge that principle in this case, and has also failed to furnish a workable standard by which future election objections may be measured.

Moreover, and of equal importance, a plurality of the court in this case, has upheld a representation election (decided by one vote) which, it has been charged, has been infected by threats of intimidation and retaliation tainting the entire election process. It has done so, without requiring the fact of those charges to be established by an adversary hearing—our time-tested and traditional method of determining truth.

Thus, I would deny enforcement of the Board's order and would remand this case for an evidentiary hearing—one that should have been held initially by the Regional Director when it became apparent that sub-

---

**15.** Citing *Cross Baking v. NLRB,* 453 F.2d 1346 (1st Cir.1971) the Board had argued that the threats by Reisner against Woodruff were vitiated because Reisner resigned prior to the representation election. The Board's reliance on *Cross Baking* could not be more misplaced. In *Cross* the *company* discharged the pro-union employee who allegedly assaulted two others. Reisner's voluntary resignation could not possibly have the same neutralizing effect as did the discharge in *Cross.* Moreover, in *Cross,* unlike the instant action, the Board *had* conducted a hearing to determine the impact of the alleged intimidation by pro-union employees by the employer.

**16.** *Peoples Gas System, Inc. v. NLRB,* 629 F.2d 35, 45 (D.C.Cir.1980).

stantial and material facts were in issue. I therefore respectfully dissent from the opinion announcing the judgment of the court.