**VITEK ELECTRONICS, INC., Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent, International Union of Electrical, Radio, and Machine Workers, AFL–CIO, Intervenor.**

**INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent, Vitek Electronics, Inc., Intervenor.**

**Nos. 84–3012, 84–3111.**

United States Court of Appeals, Third Circuit.

Argued Oct. 30, 1984.

Decided June 4, 1985.

As Amended July 3, 1985.

B. Michael Thrope (argued), John E. Jay, Jeffrey S. Donin, Parker, Chapin, Flattau & Klimpl, New York City, for petitioner Vitek Electronics in No. 84–3012, for intervenor Vitek Electronics in No. 84–3111.

Elliott Moore, Deputy Associate Gen. Counsel, William Wachtler, Charles P. Donnelly (argued), N.L.R.B., Washington, D.C., for respondent N.L.R.B. in No. 84–3012 and 84–3111.

Sandra L. Hughes (argued), Legal Dept., IUE, Washington, D.C., for intervenor IUE in No. 84–3012, for petitioner IUE in No. 84–3111.

Before GARTH and SLOVITER, Circuit Judges and LORD, District Judge *

## OPINION OF THE COURT

GARTH, Circuit Judge:

For the second time, the election held at Vitek Electronics, Inc. on June 7, 1979 is before us for review. After Vitek's first visit, *Vitek Electronics, Inc. v. NLRB (Vitek I)*, 653 F.2d 785 (3d Cir.1981), this Court remanded the case to the Regional Director, stating

> The case will be remanded with direction to the Regional Director to conduct a hearing on the issues of the alleged misrepresentation and for appropriate findings on the need for any further requested hearings prior to any recommendation to certify the results of the election.

The Board thereafter adopted the findings of an Administrative Law Judge, rejected Vitek's objections to the election, and issued a new bargaining order. Both Vitek and the union filed petitions for review; the Board cross petitioned for enforcement.

Vitek challenges the Board's action in failing to remand the case to the Regional Director for a representation hearing as we had ordered in our remand direction. Vitek has supplemented the record before this Court with affidavits indicating that the Edison, New Jersey plant to which the Board's bargaining order was specifically directed, no longer exists and that no employees remain at that facility. Vitek therefore contends that this case is moot.

We hold that neither the case nor the appeal is moot. While we are disturbed by the Board's actions taken in derogation of our earlier remand order, we will not grant Vitek's petition for review on that ground as we conclude that Vitek was not thereby prejudiced. We also conclude that substantial evidence supports the order of the Board.

Accordingly, we will enforce the bargaining order, but only to the extent that it requires bargaining over the effects of closing, the sole live issue which remains.

### I.

The International Union of Electrical Employees ("the Union" or "IUE") and Vitek ("the Company") stipulated to hold a consent election. The election took place on June 7, 1979. At this election, the Union prevailed, by 25 votes: 70 votes were cast for the Union, 45 votes were cast against the Union. Vitek filed timely objections with the Regional Director, alleging both Union misrepresentation and Union intimidation during the campaign period.

The alleged misrepresentations consisted of leaflets, one of which claimed that in area unionized plants (other than Vitek), wages were "increased regularly throughout the year, to keep pace with" the increased cost of living. Another leaflet claimed that Vitek wages were among the lowest in the area, that seniority "meant nothing" in promotion and overtime deci-

---

* Honorable Joseph S. Lord III, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

sions, that the plant failed to take adequate safety precautions against carbon monoxide fumes, that workers made ill by such fumes lost pay, and that Vitek lacked appeal procedures for employees who were discharged.[1]

The alleged acts of intimidation consisted of alleged threats said to have been made by union supporters, and an incident between two employees in which one employee wielded a knife against another employee.

Originally, the Regional Director conducted an investigation and, without holding a hearing, recommended that the objections be overruled. On December 14, 1979, the Board issued an order certifying the Union as the collective bargaining representative of Vitek's employees. In order to contest this ruling, Vitek refused to bargain, and the Union filed an unfair labor practices charge.[2] General Counsel for the Board issued a complaint and filed a motion for summary judgment. Vitek answered, asserting its election objections as a defense. The Board granted General Counsel's summary judgment motion. Vitek then took its first appeal to this Court.

This Court remanded the case, finding that Vitek's affidavits had established a prima facie case for setting aside the election, based on the alleged misrepresentations,[3] thus requiring a hearing on Vitek's objections. Significantly, the court indicated in two separate passages in its opinion that the hearing before the Regional Director was to be "prior to any recommendation to certify the results of the elec-

tion." 653 F.2d at 795. See also id. at 788 (because substantial material factual issues were disclosed, the Regional Director or the Board was required to conduct an evidentiary hearing prior to certification.)

On remand, the Board initially complied with our mandate. On October 15, 1981, a Board order issued which directed the Regional Director to conduct the court-ordered hearing before a hearing officer with respect to the validity of Vitek's objections. Six days later the Board issued a second order which amended its earlier order and directed a hearing before an Administrative Law Judge. No explanation appears in the record why the Board changed its course and ignored this Court's order to conduct a representation hearing.[4] The hearing ordered by the Board was an unfair labor practice hearing, based on Vitek's refusal to bargain, rather than a representation hearing based on Vitek's objections to election conduct.

The Administrative Law Judge issued a decision and bargaining order in favor of the Union. He also rejected claims of intimidation, finding testimony of union threats not to be credible. The Administrative Law Judge found that the incident involving employees Anthony Pollard and Rudy Newsome, in which Newsome pulled a knife on Pollard during a scuffle was neither threatening nor intimidating conduct motivated by pro-union sentiment.

As to the representations that Union negotiated contracts incorporated cost-of-living increases that "keep pace with infla-

1. For an additional discussion of the claimed misrepresentations, see Vitek Electronics, Inc. v. NLRB (Vitek I), 653 F.2d 785, 788–90 (3d Cir. 1981).

2. For a description of appeal practices, see generally Graham Architectural Products Corp. v. NLRB, 697 F.2d 534, 544–48 (3d Cir.1983) (Garth, J. dissenting).

3. On Vitek's first appeal, the Court was unable, on the record before it, to determine whether Vitek's affidavits alleging acts of intimidation also established the right to a hearing. The Court therefore directed the Regional Director to determine whether such a hearing was war-

ranted, and, if not, to set forth his reasons for so finding. Vitek I, 653 F.2d at 794–95.

4. The record discloses no explanation for the Board having flouted the Court's mandate by ordering an unfair labor practice hearing before an ALJ rather than a representation hearing before the Regional Director. Indeed, it was not until after this Court heard oral argument in the present appeal that the Board sought to justify its about-face by a letter memorandum dated October 31, 1984. That memorandum relied upon the Board's "established practice" and claimed that "the Board did not interpret the Court's remand instructions to require that it depart from its settled remand procedure."

tion", the Administrative Law Judge found that employees would not interpret "keep pace with inflation", to mean that wages would track inflation exactly, but rather that wage rates subject to such contracts were increased regularly to mitigate the effects of inflation, as was in fact the case under other IUE contracts. The Administrative Law Judge also held that Vitek had not refuted the substantial truth of the Union representation that Vitek's wages were the lowest in the area. Similarly, the Administrative Law Judge found the Union representations as to seniority rights and the carbon monoxide poisoning incident to be substantially accurate.

The NLRB affirmed the Administrative Law Judge's order on January 12, 1984. We have jurisdiction over a petition for review of a bargaining order under 29 U.S.C. § 160(f), and over the application for enforcement under 29 U.S.C. § 160(e).

## II.

Vitek has submitted an affidavit directly to this Court, stating that Vitek's Edison, New Jersey facility (the only facility covered by the bargaining order) has been permanently closed and no longer employs any member of the bargaining unit. The first issues we must thus address are whether the appeal should be dismissed as moot, *see De Funis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); *NLRB v. Globe Security Services, Inc.*, 548 F.2d 1115 (3d Cir.1977), or whether the Board's order should not be enforced as futile, *see ABC Trans-National Transport, Inc. v. NLRB*, 642 F.2d 675 (3d Cir.1981), implicitly overruled on other grounds in *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981).

■ In the context of enforcement of bargaining orders, the doctrines of mootness and futility are closely related. A petition for enforcement of a general bargaining order is moot where the bargaining

unit no longer exists, and the order can be enforced neither as a "tag end" order against the defunct firm, nor against a successor firm. *Globe Security Services, supra*, 548 F.2d at 1117. A finding of mootness would negate the "case or controversy" required for jurisdiction in this court. *See De Funis v. Odegaard, supra.*

■ Under the futility doctrine announced in *ABC Trans-National*, this Court will not enforce an NLRB order specifically directing an act that cannot be performed. In *ABC* we declined to enforce a Board order specifically directing an employer to bargain over the decision to close the operating location of the bargaining unit despite our finding that the order was proper.[5] We denied enforcement upon a finding that an order directing an employer to bargain over the decision to close a plant was futile where the plant was already closed and was not to be reopened. *ABC* presented no question of bargaining over the effects of closing a plant, as the employer there had offered in good faith to bargain over "effects".

The situation presently before us is significantly different from the situation presented in the mootness and futility cases, however. While, as in *Globe* and *ABC*, the plant location comprising the bargaining unit has closed, unlike *Globe* and *ABC*, here, there remains a live possibility of bargaining over the effects of the closing.

In *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 681, 101 S.Ct. 2573, 2582, 69 L.Ed.2d 318 (1981), the Supreme Court acknowledged that, in the context of plant closings,

[t]here is no dispute that the union must be given a significant opportunity to bargain about these matters of job security as part of the "effects" bargaining mandated by § 8(a)(5). See, *e.g.*, *NLRB v. Royal Plating & Polishing Co.*, 350 F.2d 191, 96 (CA3 1965); *NLRB v. Adams*

---

**5.** The Supreme Court has since held that an employer need not bargain over the *decision* to close a plant. *See First National Maintenance*

*Corp. v. NLRB*, 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981).

*Dairy, Inc.,* 350 F.2d 108 (CA8 1965), *cert. denied,* 382 U.S. 1011 [86 S.Ct. 619, 15 L.Ed.2d 526] (1966).

 Bargaining over the effects of a closing is thus mandatory as a "condition of employment" under 29 U.S.C. § 159(a). While the bargaining order in the instant case did not explicitly order "effects" bargaining, it did order Vitek to bargain "concerning rates of pay, wages, hours, and other terms and conditions of employment...." The language of this order thus tracks the language of section 9(a) of the National Labor Relations Act, which the Supreme Court held in *First National Maintenance* to mandate bargaining over the effects of a plant closing. Since Vitek may still bargain with the Union over the effects of its closing of the Edison facility, this case is not moot and enforcement of the Board's order would not be futile.[6]

## III.

Turning to Vitek's objections to the hearing procedures on remand, we note at the outset that this Court in *Vitek I* was quite explicit in its direction to the Board on remand:

> The case will be remanded with direction to the Regional Director to conduct a hearing on the issues of the alleged misrepresentation and for appropriate findings on the need for any fur-

ther requested hearings *prior to any recommendation to certify the results of the election.*

*Vitek I,* 653 F.2d at 795 (emphasis added). Only a hearing before the Regional Director subject to the provisions of 29 C.F.R. §§ 102.66 and 102.69(c) could occur *prior* to certification of the election results.[7] Moreover, this Court clearly expressed an understanding that at the hearing which it ordered, hearsay testimony would be admitted in evidence because the hearing to be conducted on remand would not be subject to the Rules of Evidence. *Vitek I,* 653 F.2d at 794–95 & n. 13.

Under 29 C.F.R. § 102.69(e), a hearing before the Regional Director, prior to certification, is conducted according to 29 C.F.R. § 102.66. Section 102.66 provides, *inter alia,* that "the rules of evidence prevailing in courts of law or equity shall not be controlling." 29 C.F.R. § 102.66(a). On the other hand, an unfair labor practice hearing under 29 C.F.R. § 102.34, as was held here, is subject to the Federal Rules of Evidence. Section 102.39 provides:

> § 102.39 Rules of evidence controlling so far as practicable.
>
> Any such proceeding shall so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the

**6.** During the pendency of this appeal, the Union filed additional unfair labor practice charges claiming, among other things, that Vitek had an obligation to bargain over the effects of the plant closing, but failed to do so. The unfair labor practice proceeding based on the failure to bargain over effects has been stayed pending the outcome of this appeal. Vitek claims that *NLRB v. Globe Security Services, Inc.,* 548 F.2d 1115 (3d Cir.1977) must control the mootness issue in this case because in *Globe,* as in the instant case, an additional unfair labor practice complaint, based on a refusal to bargain over the effects of a plant closing, was pending before the Board. Nevertheless, *Globe* did not address, as we do here, the question of effects bargaining as being integral to a bare-bones bargaining order and *Globe* was decided prior to the Supreme Court's opinion in *First National Maintenance Corp. v. NLRB,* 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981), which required bargaining over *effects* of a decision to

close. The pendency of these charges based on failure to bargain over effects underscores the existence of a live controversy in this case.

We have permitted the record in this case to be supplemented by the various communications reflecting the Union's unfair labor practice charges still pending before the Board and stayed by the Board.

**7.** The NLRB may, in certain circumstances, issue a bargaining order after an unfair labor practice hearing even though no election has taken place and no certification ordered. See *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). Such an order is limited to circumstances where unfair labor practice alleged against the employer, other than a refusal to bargain, have made a fair election impossible. In the instant case, the refusal to bargain after the earlier (since reversed) certification of the bargaining unit is the only unfair labor practice charged against Vitek.

district courts of the United States, adopted by the Supreme Court of the United States, pursuant to the Act of June 19, 1934. (title 28 U.S.C., secs. 723-B, 723-C).

At the outset of the hearing that the Board ordered, the Administrative Law Judge stated that he considered the proceeding to be an unfair labor practice proceeding, and thus subject to the provisions of 29 C.F.R. §§ 102.34 and 102.39. The Administrative Law Judge thus indicated that he considered the Federal Rules of Evidence to be controlling. Accordingly, Vitek was not allowed to introduce hearsay testimony during these proceedings, although the Administrative Law Judge did allow Vitek to make offers of proof in each instance of hearsay. In doing so, however, the Administrative Law Judge indicated that he would not rely on such proffered testimony.

The principal excluded hearsay testimony consisted of (1) testimony by two employees that a third employee was threatened: "that somebody from your Indian group was against the Union and that if the Union won and got in, that person would have a hard time," (2) testimony by one supervisor that an employee, Marcelo Robles, would only speak to him about the Union out of earshot of Elestine Randolph (another employee),[8] and that Robles was going to vote for the Union because "[T]here was going to be trouble for the Spanish people if they didn't vote for the union," and (3) testimony by another supervisor that a Spanish speaking employee had commented "how the Spanish speaking people were afraid because they had been threatened."[9] In addition Vitek complained that the Administrative Law Judge improperly excluded a significant OSHA inspection report on hearsay grounds.

■ To justify the unfair labor practice hearing which the Board ordered in derogation of this Court's remand, the Board explained that its custom was to hold hearings in the nature of an unfair labor practice proceeding. However, cases cited by the Board which hold that an unfair labor practice hearing was acceptable where the remand was ambiguous, are inapposite as the Court's remand in *Vitek I* was explicit and unambiguous. *See Beaird-Poulan Division, Emerson Elec. Co. v. NLRB*, 649 F.2d 589, 597–98 & n. 6 (8th Cir.1981); *NLRB v. Commercial Letter, Inc.*, 496 F.2d 35, 38 (8th Cir.1974). Nor does the fact that Board practice is to treat all remands in the context of an unfair labor practice proceeding, justify its failure to implement our remand in this case. *Cf. Campbell Products Co.*, 260 NLRB 1247, 1247 n. 2 (1982) (Board "does not, in cases such as this, reopen and remand the underlying representation case."), enf'd without opinion 707 F.2d 1393 (3d Cir.1983) The Board contends, that due process' requires no more than some sort of hearing at some stage in the representation election certification process, see *Beaird-Poulan, supra*, and that Vitek has been accorded everything to which it was entitled, since Vitek's claim to a hearing was based only on due process and not on statutory requirements.[10]

---

**8.** This statement was not in fact excluded, but rather was admitted for purposes other than truth of a matter asserted.

**9.** Vitek also complains specifically in its brief of another piece of testimony that it claims was excluded. "I had received this comment from Mani Dias, that some of the Spanish-speaking people had been threatened." Appendix at A1187. See Br. of Appellants Vitek at 62. In fact, an objection to this testimony was overruled and the testimony was admitted. See Appendix at A1186–A1187.

**10.** Since the certification order is not itself directly reviewable, see *American Federation of*

*Labor v. National Labor Relations Board*, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940) (not final order), a company may obtain review of a denial of its objections to an election only by refusing to bargain and appealing the resulting unfair labor practice order. Nevertheless, neither the statute nor the regulations require a hearing at the representation stage. Regulation § 102.69(f) provides that:

If it appears to the Board that such exceptions raise substantial and material factual issues, the Board *may* direct the regional director or other agent or the Board to issue and cause to be served on the parties a notice

This argument, however, does not take into account the specific remand order which this Court entered after Vitek's first appeal. That remand clearly directed the Board to hold a certification hearing. If the Board was dissatisfied with that order, its proper recourse was to seek either rehearing before this Court or review by the Supreme Court. It could not ignore that order nor can it now collaterally attack that order.

■ Yet by the Board's direction to the Administrative Law Judge to conduct the hearing as an unfair labor practice hearing rather than as a representation hearing as we had ordered, the Board not only ignored our directive, but in doing so, it thwarted the very relief fashioned by us in *Vitek I.* Such an action, without more, would normally result in our refusing enforcement of the Board's present order. While we might well be tempted to follow such a course in order to vindicate our authority and our earlier mandate, we are nevertheless constrained not to do so because of two compelling considerations.

First, we are all too aware of the length of time that has transpired since this proceeding commenced and the fact that if we were to remand for yet another hearing, still more time would elapse before certification of any bargaining representative could take place. Judge Adams, concurring in *NLRB & ARA Services, Inc.,* 717 F.2d 57 (3d Cir.1983), has observed that although hearings serve a useful purpose, a hearing that is not required promotes undue delay in the administrative process at the expense of the freedom of choice of the workers. "Appellate courts must be mindful of the capacity of legal and administrative delay to frustrate the statutory rights afforded employees under the N.L. R.A." 717 F.2d at 70 (Adams, J., concurring). Moreover, the passage of time by itself could unfairly prejudice the merits of this proceeding when neither Vitek nor the Union, but only the Board, has been at fault in designating one form of hearing instead of another.

Recognizing that the National Labor Relations Act has as one of its underlying purposes the prompt resolution of disputes concerning employee's bargaining representatives so that the collective bargaining mechanism can be brought into play without undue delay,[11] we are reluctant once again to remand for another hearing simply to uphold this Court's authority where such a remand might undercut the Act's purpose and may, as our reading of the record discloses, result in substantially the same conclusion.

The second consideration which counsels against another remand is that, having conducted a careful and independent review of the record, we conclude that Vitek was not prejudiced by the form of the hearing given. It is true that the Administrative Law Judge stated that he felt bound by the Federal Rules of Evidence and accordingly he excluded hearsay testimony which may have been admitted in a representation hearing. However, even where hearsay testimony should have been permitted, we recognize that a hearing officer is entitled

---

of hearing on said exceptions before a hearing officer. (emphasis added).

Thus, the regulatory source of the hearing Vitek seeks makes such a hearing discretionary with the Board. However, denial of such a hearing at the representation stage followed by refusal to reconsider election objections at the unfair labor practice stage has been held to deprive the employer of its right to due process. *See, e.g., Anchor Inns, Inc. v. NLRB,* 644 F.2d 292, 296 (3d Cir.1981) (citing line of cases commencing with *NLRB v. Sun Drug Co.,* 359 F.2d 408, 414 (3rd Cir.1966), which relied on due process).

Thus, Vitek's original claim to a hearing was grounded in due process. Significantly, Vitek's present claim, however, is based on this Court's order of remand in *Vitek I.*

11. This policy was adverted to as follows in S.Rep. No. 573, Committee on Education and Labor, 174th Cong. 1st Sess. 22–23:

Where there are contending factions of doubtful or unknown strength, or the representation claims of the only organized group in the bargaining unit are challenged, there exists that potentiality of strife which the bill is designed to eliminate by the establishment of this machinery for prompt governmentally supervised elections.

to discount the probative value of such testimony. Further, even where the Federal Rules of Evidence do not apply, as, for instance, in a representation hearing, a hearing officer may nevertheless exclude "unreliable" evidence, whether hearsay or not. *See* 3 K. Davis, Administrative Law Treatise § 16.5 at 235–36. *See also Southern Paper Box Co.,* 207 NLRB 56, 58 & n. 10, enforced 506 F.2d 581 (8th Cir.1974). Moreover, the record discloses that the Administrative Law Judge here reported that "all of my rulings made in this case would have been exactly the same were this proceeding a representation proceeding." Appendix at A81. Nor do we find that the role of the General Counsel, whom Vitek charges with having supported the Union's position, rather than with having taken a neutral position as the Regional Director assumes in a representation hearing, prejudiced Vitek in any way.[12]

Thus, although Vitek's claim that the Board disobeyed the mandate announced in *Vitek I* is not without substance, we are satisfied that on the record as a whole, we would be disserving the policy of the Act and would be contributing little to the resolution of the merits of this controversy if we were to remand for a representation hearing at this time. We are confident that the Board will not slight our directions in future cases as it has in this case. Thus,

for all these reasons, we reject Vitek's argument that another hearing should be ordered and we turn to the question of whether substantial evidence supports the Board's order.

### IV.

#### A.

In considering the alleged Union misrepresentations, the Board purported to apply the more searching standard of *Hollywood Ceramics Co.,* 140 NLRB 221, 224 (1962) (emphasis added):[13]

> We believe that an election should be set aside only where there has been a misrepresentation or other similar campaign trickery, *which involves a substantial departure from the truth,* at a time which prevents the other party or parties from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on the election.

■ Substantial evidence supports the Administrative Law Judge's findings that each of the challenged Union representations was not a substantial departure from the truth.

Vitek challenged the Union's representation that under existing Union contracts with other employers, wages of employees

---

**12.** Vitek also disputes the Administrative Law Judge's exclusion of an OSHA report and the limiting of cross examination of the Union's expert witness. Since the OSHA report, which found satisfactory air quality, could not establish what measures were taken by Vitek in response to charges that Vitek had taken no precautions against carbon monoxide discharges, its exclusion was harmless.

The Administrative Law Judge's limitation of Vitek's cross examination of the Union expert, Gugliano, while error, was harmless error. While Gugliano was introduced as an "expert" on interpretation of Union contracts (primarily to establish that across-the-board increases were part of cost-of-living protection), Vitek was not allowed to cross examine him on his knowledge of the consumer price index. The Administrative Law Judge excluded this line of questioning as irrelevant to the issues to which Gugliano was testifying. Appendix at A2968–A2973. While Gugliano did offer testimony about the calculation of wages under the Union contracts,

he testified primarily to establish that across-the-board wage increases are considered a form of inflation protection. Since knowledge of the consumer price index is irrelevant to this particular aspect of Gugliano's testimony, exclusion of the cross-examination, though incorrect, was harmless.

**13.** The Board has since reversed its *Hollywood* position, and will now "no longer probe into the truth or falsity of the parties' campaign statements, and ... will not set elections aside on the basis of misleading campaign statements." Midland National Life Insurance Co., 263 NLRB 127, 133 (1982). Since the election survived the stricter inquiry of *Hollywood Ceramics,* the Board declined to decide whether to apply *Midland* retroactively in this case. Appendix at A20 n. 1. Nevertheless, the Union argues on appeal, as a fallback position, that the Board should have adopted the more lenient standard.

kept pace with inflation. At the remand hearing, the Administrative Law Judge heard testimony by Vitek's expert concerning the actual effect of cost-of-living protection clauses under Union contracts. The thrust of the expert's testimony was that IUE negotiated contracts, did not completely protect workers from inflation. He first testified that considering only cost-of-living increases, an employee would lose up to $1.28 per hour to inflation. When Union negotiated across-the-board contract increases were factored into the calculus, the expert then concluded that an average worker would still lose up to $.28 per hour.

The Union, in turn, presented testimony of its own expert concerning cost-of-living protection, including across-the-board wage increases at other plants. The Administrative Law Judge found that the representation that other Union contracts "keep pace with" the cost of living would not be interpreted by employees to mean that contract wages exactly equalled inflation. Moreover, he found that taking across-the-board increases into account, contract wages at other plants *did* approximately keep pace with inflation, based on the testimony by both Vitek's and the Union's experts.

During the Union campaign, the Union distributed a leaflet stating: "Few safety precautions were taken to protect the people from carbon monoxide fumes, and when they got sick because of the fumes, many of the workers lost pay." Vitek asserts that this statement is a misrepresentation of fact. Vitek presented evidence of subsequent remedial measures taken by Vitek and evidence that only workers who did not substantiate the reason for their absence were not paid.

The Administrative Law Judge found from the evidence that on three occasions employees became sick from carbon monoxide fumes, and that many employees who left work on those occasions were in fact not paid. Thus, the Administrative Law Judge concluded that the Union's representation came within the bounds of fair argument, since the fact remained that

workers did become sick and some workers did lose pay.

Vitek also presented evidence of 15 area employers who paid their workers at a lower wage scale than Vitek paid its workers. Vitek offered this evidence to establish that the Union claim that Vitek paid the lowest wages in the area was a misrepresentation. The Administrative Law Judge found that the representation that Vitek's wages were the "lowest in the area" was not a substantial departure from the truth, given that Vitek could establish that out of some 2000 area employers, only 15 employers paid lower wages.

The Administrative Law Judge also ruled in the Union's favor on the issue of seniority as it affected promotion and overtime. The Union had represented that "seniority meant nothing when it came to promotion and overtime." Appendix at A1485, A3426–27. Vitek challenged this representation. Vitek presented testimony of its president and production manager who testified that seniority was a consideration in promotion and overtime assignments. Although Vitek claimed that seniority was a factor in promoting employees and in making overtime assignments, the evidence revealed that under Vitek's system, more senior employees would not in the long run receive more overtime assignments or promotions. Relying on this evidence, the Administrative Law Judge concluded that the Union's representation did not involve a substantial departure from the truth.

The representation made by the Union that "Employees could be fired with no chance of appeal" was also challenged by Vitek. Vitek presented evidence concerning existing grievance procedures for employees including testimony by Vitek's president who stated that "there was no one stopping dischargees from com[ing] directly to me." The Administrative Law Judge, however, found that the Union's statement did not constitute a misrepresentation in light of the evidence that employees had never been notified by Vitek of any internal appeal procedure, if indeed, one even existed. Appendix at A1496–99.

We are satisfied that the Administrative Law Judge's findings that no misrepresentations were made by the union are supported by substantial evidence.

### B.

■ The Administrative Law Judge's rejection of Vitek's claims of Union intimidation is also supported by substantial evidence. In *Zeiglers Refuse Collectors, Inc. v. NLRB*, 639 F.2d 1000, 1005 (3d Cir.1981) we announced this Court's standard for voiding an election based on evidence of employee intimidation. We said:

We concede that the goal of "laboratory conditions" cannot always be satisfied. Not every election that fails to achieve perfection should be set aside, otherwise the employees' choice of a representative might never be accomplished, because a never-ending series of challenges to elections could be foreseen. Though we are reluctant to accept less-than-perfect conditions in the election process, we will do so, but only where no coercive conduct has poisoned the fair and free choice which employees are entitled to make. Hence, extreme care must be taken that the laboratory conditions have not become so tainted that employees may have based their vote not upon conviction, but upon fear or upon any other improperly induced consideration. The Board and the courts have emphasized that the existence of a coercive atmosphere, regardless of how such an atmosphere came about, is the critical fact upon which the Board should focus in determining whether a fair and free election was impossible. *Diamond State Poultry Co.*, 107 NLRB, 3, 6 (1953); *Cross Baking Co. v. NLRB*, 453 F.2d 1346, 1348 (1st Cir.1971). Thus, if it is determined that a substantial possibility existed that the threats affected the outcome of the election, a new election must be held.

639 F.2d at 1005. In *Zeiglers*, however, the testimony was direct and unequivocal, that a 6' 7" 250 pound ex-Marine had threatened employees with physical violence unless they voted for the union. We found that evidence sufficiently compelling to overturn the election.

Here, however, there is no such specific, direct or unequivocal testimony, other than testimony concerning the incident which occurred between employees, Pollard and Newsome in which Newsome threatened Pollard with a knife. Vitek's evidence of union intimidation consisted primarily of hearsay testimony by employees about vague threats said to have been made by third parties against other employees. Examples of such testimony include: "Q. What did Elestine tell you about strikes? A. If I crossed the picket line I'd be hit with sticks or that I had to vote 'yes' for the union," and, "When she was talking about the union she said, like, you know, she said if I'm not going to vote for the union, maybe something going to happen, you know, to me, or I can't find my car or something like that."

Among other claimed incidents of intimidation were: 1) a statement attributed to Elestine Randolph and made to Maria Diaz, both of whom had been working on cutting and connecting operations when an argument broke out as to which employee was to "cut" and which was to "connect": "Things are going to change when the union gets in and that she [Diaz] better vote for the union"; 2) a confrontation between employee Kim Smith and Elestine Randolph concerning a refund for picnic tickets; 3) Smith's claim that Randolph at some time during the union campaign had told Smith that if Smith crossed a union picket line she would be hit by sticks and that she had to vote in favor of the Union; 4) various claimed appeals to racial prejudice; and 5) allegedly intimidating statements which appeared in a Union leaflet. In each instance the Administrative Law Judge examined in detail the conflicting versions of the particular incident charged and made reasoned credibility determinations, to which we must defer. *Eastern Engineering & Elevator Co. v. N.L.R.B.*, 637 F.2d 191, 197 (3d Cir.1980).

As to the altercation between Pollard and Newsome, the one instance of purported intimidation concerning which the Administrative Law Judge heard clear, direct testimony, there was evidence that Newsome's brandishing of the knife resulted from Pollard's threat to a third employee, Frances Kelly, after she had taunted Pollard for being pro-company. The Administrative Law Judge properly concluded that the Newsome—Pollard incident was not motivated by Union animus, rather it was triggered by Pollard's threat to strike employee Kelly and was only tangentially related to the election campaign.

We conclude that the findings that no intimidation occurred accords with our standard and is supported by substantial evidence.

### V.

Our conclusion that the record reveals substantial evidence which supports the Administrative Law Judge's findings and conclusions, necessarily results in a determination that the bargaining order entered by the Board must be approved insofar as it certifies the Union as the bargaining representative of Vitek's Edison, New Jersey employees. This being so, the question that remains is, to what extent must Vitek bargain with the Union?

Two considerations inform us in our answer to that question. First, the bargaining order itself is by its terms limited to a unit consisting of employees at Vitek's Edison, New Jersey location. No one disputes that the Edison location no longer exists and that no employees of Vitek remain at that facility. Second, while the decision to close Edison was not a mandatory subject of bargaining, see *First National Maintenance, supra*, Vitek was nevertheless obliged to bargain over the *effects* of that decision.[14]

Thus we will not enforce bargaining as to "rates of pay, wages, [and] hours," since enforcing such an order would now be futile in light of the closing of the Edison facility. See *ABC Trans-National, supra*. We will enforce the Board's order, however, to the extent that it requires bargaining over the *effects* of plant closing, as one of the "other terms and conditions of employment." See *First National Maintenance, supra*.

### VI.

For the above reasons, Vitek's petition for review of the Board's January 12, 1984 order will be denied, and the Board's cross application for enforcement of the bargaining order will be granted, but only to the extent that the bargaining order requires Vitek to bargain over the effects of the closing of its Edison, New Jersey facility.

Vitek's motion to amend its exhibit 118 to include the October 18, 1984 affidavit of Stephen R. Dragos will be granted. This affidavit informed us of the closing of the Edison facility and of the fact that Vitek no longer had employees remaining at the Edison plant.

The Union's petition for review will be denied.[15]

Each party shall bear its own costs.

14. We note that in the unfair labor practice proceedings currently pending before the Board, see note 6, *supra*, the Union has withdrawn all charges except those related to Vitek's future obligation to bargain over the effects of closing.

15. The Union filed a petition for review of the Board's order seeking extraordinary remedies, essentially notice and access orders and attorneys' fees. The remedial measures ordered by the Board in a particular case are committed to the Board's discretion. *Fibreboard Paper Products v. NLRB*, 379 U.S. 203, 216, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964). While, the Board has ordered reimbursement for litigation expenses in the case of a "patently frivolous" appeal. (Tridee Products, Inc., 194 NLRB 1234, 1236–37 (1972), enforced as modified sub. nom. *Internat'l Union of Electrical, R & U. Workers v. NLRB*, 502 F.2d 349, 356–57 (D.C.Cir.), cert. denied, 417 U.S. 921, 94 S.Ct. 2629, 41 L.Ed.2d 226 (1974)) here, the Board found that because the resolution of Vitek's objections turned on the credibility of witnesses, Vitek's appeals were not frivolous and litigation expenses against Vitek were not called for. Such a finding is clearly within the Board's discretion, as is its finding that notice and access remedies are not re-

SLOVITER, Circuit Judge, concurring and dissenting.

I agree with the conclusion of the majority that the issues before us are not moot and that bargaining would not be futile. I further agree that there is substantial evidence to support the findings of the Board that Vitek committed an unfair labor practice when it refused to bargain with the Union.

With respect to Part III of the majority opinion, it does appear that the mandate of this court in *Vitek I* was probably sufficiently explicit to require the Board to follow it or to seek its modification. However, I write separately on this issue to note my concern with a court mandate that directs the Board to proceed on remand by a representation proceeding, rather than by an unfair labor practice hearing, which the Board advises us is its usual procedure. As the Board explained, its choice of a hearing before an Administrative Law Judge in the context of an unfair labor practice proceeding rather than a representation proceeding avoided the duplication and delay that would have inevitably followed a reopened representation hearing. I believe that the choice of hearing to be used is among the many details of procedure that are vested in the considerable discretion of the Board.

Finally, with respect to Part V of the majority opinion, I believe that once we have concluded that the Board's findings were supported by substantial evidence, we are obliged to enforce the bargaining order in full. While there may be a case in which the equities are so strong as to impel us to relieve a party of its obligation to bargain because of later circumstances, this case does not fit into that mold.

As the majority notes, this dispute between the parties has been pending for the almost six years since the election took place on June 7, 1979. It appears that Vitek has never really attempted to achieve a fruitful relationship with the Union. Instead it used every available procedure to challenge the Union's success in the election, thereby postponing indefinitely its bargaining obligation. Finally, after the second rejection of its position before the Board and less than two weeks before its second argument in this court, Vitek chose to close the plant that was the subject of this dispute.

If we reward such behavior with a merely partial enforcement order, as does the majority, we will encourage similar conduct by other employers. I believe the appropriate response to such employer conduct was set forth as follows by this court:

> We conclude that the fact that a respondent has terminated its business is irrelevant in a petition by the Board for immediate and full enforcement of an order.... Moreover, the courts should not recommit the order for consideration by the Board of respondent's allegations of impossibility of compliance.... After the order is enforced by this court, the Board may determine in a subsequent proceeding whether compliance is fully possible. In any event, impossibility may be raised by respondent as a defense if a contempt action is brought ... by the Board.

*NLRB v. Kostilnik,* 405 F.2d 733, 735 (3d Cir.1969) (footnote and citations omitted).

In dealing with the somewhat analogous situation of employee turnover after the issuance of a bargaining order, this court pointedly avoided placing a premium on the continued litigation by an employer that is inevitable when a bargaining order can be chipped away by subsequent events. *See Hedstrom Co. v. NLRB,* 629 F.2d 305, 312 (3d Cir.1980) (in banc), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1699, 68 L.Ed.2d 196 (1981).

Therefore, although I agree with the majority that we should enforce the Board's order insofar as it requires bargaining as to the effects of the closing, I would have gone further and enforced the entire order, leaving it to Vitek to utilize the available administrative compliance procedure to explain and/or excuse its failure to comply.

quired. On this record, the Board's findings do

not constitute an abuse of discretion.